CHEROKEE STRIP LIVE STOCK ASSOCIATION v. CASS LAND & CATTLE COMPANY, *Appellant.*

In Banc, March 30, 1897.

1. **Indian Lands:** GRANTS TO CHEROKEE INDIANS: VOID LEASE. The effect of the patent to the Cherokee Indians of certain lands, made on the thirty-first of December, 1838, upon the condition that "the lands hereby granted shall revert to the United States if the Cherokee Nation become extinct or abandon the same," was to vest in the tribe a fee simple title to said tract. But a lease made with said nation by the plaintiff was void because by the act of Congress of June 30, 1834, it was provided that "no lease from any Indian nation shall be of any validity in law or equity unless the same be made by treaty or convention entered into pursuant to the Constitution," the rule of law being that a contract forbidden by law is void.

2. **Landlord and Tenant:** SUBLEASE. But a tenant can not dispute the title of his landlord. So that, although the plaintiff's contract with the Cherokee Nation for the use of its lands was void, yet a sublease between plaintiff and defendant, in pursuance to which defendant executed its promissory note as payment of the rent for the use of the same lands, and defendant went into possession thereof, is valid and binding, and the sublessee must pay the note, although the President of the United States issued a proclamation which compelled the defendant to abandon such lands before the expiration of the lease term.

3. **Landlord and Tenant:** BASIS OF LEASE. The relation of landlord and tenant does not rest upon the landlord's title, but upon the agreement between the parties, followed by the possession of the premises by the tenant under the agreement.

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Chas. H. Nearing* and *A. A. Whitsitt* for appellant.

(1) The court should have excluded the contracts and notes from the evidence, because upon their face they

constitute one contract and were void. *First.* Because it was a contract with an Indian nation, and was never approved by the Secretary of the Interior and the commissioner of Indian affairs. U. S. Revised Statutes, sec. 2103. *Second.* It was void because the Indians had no interests in the land that could be conveyed. U. S. Revised Statutes, sec. 2116; *Cherokee Nation v. The State of Georgia,* 1 Peters, 1; *U. S. v. Kagma,* 118 U. S. 375; *U. S. v. Rogers,* 4 Howard, 567; *U. S. v. Holliday,* 3 Wall. 419; *U. S. v. Cook,* 19 Wall. 591; *Leavenworth, etc., R'y Co. v. U. S.,* 2 Otta. 742; *U. S. v. 43 gallons of whisky,* 108 U. S. 491; *Cherokee Nation v. U. S.,* 119 U. S. 1; Opinion of Attorney-General Devans, Feb. 25, 1880; Opinion of Attorney-General Garland, July 21, 1885; Opinion Ass't Attorney-General Shields, Oct. 26, 1889; Opinion Attorney-General Miller, Feb. 14, 1890; Opinion Secretary Noble, Oct. 26, 1889; Report of Fifty-first Congress, No. 3584, dated January 23, 1891. (2) The lease being void, plaintiff could not recover even if the property had been occupied by defendant. *Hatfield v. Wallace,* 7 Mo. 112; *Dupas v. Wassell,* 1 Dillon, 213; Greer on Landlord and Tenant, sec. 116; *Milton v. Haden,* 70 Am. Dec. 523; *Holderman v. Pond,* 45 Kan. 412; *State v. Williamson,* 118 Mo. 146–152; *Ohio L. I. & T. Co. v. Merchants, etc.,* 53 Am. Dec. 742. (3) The president is authorized to exercise general superintendence and care over any tribe or nation which was removed upon an exchange of territory under authority of the act of May 28, 1830, "to provide for an exchange of land with the Indians residing in any of the States or Territories, and for their removal west of the Mississippi," and to cause such tribe or nation to be protected, at their new residence, against all interruption or disturbance from any other tribe or nation of Indians, or from any other person or persons whomsoever. U.

S. R. S., sec. 2114.    (4) No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution, etc.    U. S. R. S., sec. 2116.

*John L. McAtee* and *Noah M. Givan* for respondent.

(1) The Cherokee nation held and owned the strip, and had exclusive possession and jurisdiction over it at the time the contract was made, and enjoyed by defendant.    The right of the Cherokee nation to consent to the use of the grass upon the Cherokee outlet, west of ninety-six degrees, to make the consent and agreement therefor in writing, to receive payment therefor, and to arrange with grazers of cattle for temporary possession of the country, appears from the following: *First*. Preliminary negotiations between the United States and the Cherokee nation. *Second*. Act of Congress, May 28, 1830; 4 Statutes at Large, p. 411.    *Third*. Treaty of 1835.    *Fourth*. By patent from United States dated December 31, 1838.    (2) The fee simple title to the lands of the outlet, from the date of the execution, and delivery of the patent, the legal possession, the legal control, the power to contract for the sale, and the power to convey the fee, were in the Cherokee nation. *Holden v. Joy*, 17 Wall. 211; *United States v. Rogers*, District Court, W. D. of Ark. 1885, 23 Fed. Rep. 658.    Opinion of Attorney-General Devens; 16 Opinions of Attorney-General, p. 430; *Cherokee Nation v. Southern Kansas Railway Co.*, 135 U. S. 656; Vol. 10, Sup. Ct. Rep. 965.    (3) "A general rule has been asserted which certainly rests upon

reason and justice. It is, that where a party has accepted and made his own the benefit of a contract, he has estopped himself from denying in the courts the validity of the instrument by which those benefits came to him." 2 Parsons on Contracts, 790; *Hathaway v. Payne,* 34 N. Y. 92; *Trust Co. v. Railroad,* 23 Fed. Rep. 306; *Farmers' L. & T. Co. v. Railroad,* 2 Fed. Rep. 117; *W. U. Tel. Co. v. Railroad,* 3 Fed. Rep. 422; *Hatch v. Hanson,* 46 Mo. App. 333; *Reed v. Railroad,* 50 Mo. App. 504; Morawetz on Corporations, sec. 720, 721. (4) It is a well settled rule that a tenant shall never be permitted to controvert his landlord's title. *Stagg v. Eureka T. & C. Co.,* 56 Mo. 317; *Loring v. Harmon,* 84 Mo. 123; *Higgins v. Turner,* 61 Mo. 249. (5) The proclamation of the president is no defense unless as an eviction, and that is no eviction. Eviction is something done by the landlord with the intention of depriving the tenant of the enjoyment of the premises. 1 Taylor on Land. and Tenant, sec. 379; *Boral v. Lawton,* 84 Eng. C. L. 64; *Home, etc. Co. v. Sherman,* 46 N. Y. 372; *Lordsburg v. Srinder,* 31.N. Y. 514. (6) And if the tenant is evicted or disturbed by parties not claiming under the lessor his only remedy is against such parties. *Baugher v. Wilkins,* 16 Md. 35, in 77 Am. Dec. 279; *Ellis v. Welch,* 6 Mass. 246; *Gardner v. Keteltas,* 3 Hill, 330, and 33 Am. Dec. 637. (7) To render the landlord liable for tenant's ouster or to constitute a defense, it must appear that it was caused by the former, or by his consent, and that the tenant dissented. *Perry v. Wall,* 68 Ga. 70; *Whitney v. Myers,* 1 Duer. 266; *Leamed v. Ryder,* 61 Barb. 552.

BURGESS, J.—The petition in this case is in two counts. The first is on a promissory note, and the second on *quantum meruit.* As there was judgment for de-

fendant on the second count, and no appeal taken by plaintiff from the judgment on that count, it will not be further noticed. The note calls for $1,193.16, and reads as follows:

"$1,193.16.    CALDWELL, KANS., Jan. 1, 1889.

"On June 15, 1890, we promise to pay to the order of A. J. Snyder, trustee, the sum of eleven hundred, ninety-three and $\frac{16}{100}$ dollars at the Stock Exchange Bank, Caldwell, Kansas, with interest after maturity at the rate of ten per cent per annum until paid. Without defalcation, value received.

"This note is given as evidence of indebtedness under leases and agreements entered into between the undersigned and the Cherokee Strip Live Stock Association, whereby certain lands in the unoccupied Cherokee country, Indian Territory, are leased; and is to be governed as to its maturity and payment by the terms of the lease and agreement aforesaid on file at the office of the payee, at Caldwell, Kansas, but payment is enforcible in any court of the United States or elsewhere.    CASS LAND & CATTLE COMPANY,

"By ZENA LEONARD, President."

The answer alleges that the title to the land leased by plaintiff to defendant and referred to in the note, is now, and has always been, in the government of the United States which has the control and supervision of it. That the Indian tribe known as the Cherokee Nation, from which plaintiff leased the land, and under which said lease plaintiff sublet to defendant, only occupied the land subject to certain restrictions, and at all times subject to the control and supervision of said government. "That the said Indian tribes so occupying said property had no right or authority to lease said lands for grazing or any other purpose. That heretofore and on or about the seventeenth day of February, 1890, Benjamin Harrison, President of

the United States, and in the exercise of the authority vested in him as chief executive of the government of the United States, issued a proclamation whereby he declared the pretended lease set forth in plaintiff's petition to be null and void and of no force and effect, and commanded and directed plaintiff, and all persons holding through or under it, to be restrained, prohibited, and prevented from bringing any or all cattle or live stock upon said property, or any portion of the same, or using or occupying said property or any portion of the same in any manner whatsoever, and that plaintiff and all and any persons holding under or through plaintiff remove all cattle and property of any nature whatsoever from said real estate on or before the first day of October, 1890. That said lease or agreement is void because it was not executed as required by the Revised Statutes of the United States, as required by section 2103, nor approved by the Secretary of Interior, as therein required. That by reason of said proclamation as aforesaid, these defendants were prevented from occupying or using said property, or deriving any benefit from it in any manner whatsoever, the same being of no avail or effect.''

Plaintiff replied to the answer, denied all allegations therein, and alleged: ''That on or about the nineteenth day of September, 1890, the President of the United States, referred to in the said answer, issued an order or proclamation, which was in the words and figures following, to wit:

''  'PROCLAMATION.

'' 'To whom it may concern:

'' 'Whereas, it has been represented to me that by reason of the drouth which has prevailed in the Indian Territory and in the adjoining States, the execution of my proclamation of February 17, 1890, requiring the

removal of all live stock from the Cherokee Outlet on or before October 1, would work great hardship and loss, not only to the owners of stock herded upon the strip but to the owners of cattle in the adjoining States; and,

" 'Whereas, the owners of all cattle now herded upon the Outlet have submitted to me a proposition in writing whereby they agree to remove one half of their stock from the Outlet on or before November 1, and the residue thereof and all their property and employees on or before December 1, next, and to abandon all claims in said Outlet.

" 'Now, therefore, I, Benjamin Harrison, President of the United States, do give notice and proclaim that the time heretofore fixed for the removal of the live stock herded upon said Outlet is extended to November 1 as to one half thereof, and to December 1 next, as to the residue thereof and as to all property and employees.

" '(Signed)          BENJAMIN HARRISON.
" 'September 19, 1890.' "

The case was tried to the court sitting as a jury.

In behalf of plaintiff the court declared the law to be as follows:

"1. That under the pleadings and evidence in this case, the finding should be for plaintiff.

"2. The court declares the law to be, that the ouster by a third party without title or right, is simply an unauthorized intrusion against which the landlord, in the absence of special contract to the contrary, is not obliged to provide, nor is such unlawful action of a third party any defense against the landlord's claim of rent."

Defendant asked the court to declare the law to be as follows:

"1. The court, sitting as a jury, finds the issues for the defendant.

"4. The court, sitting as a jury, finds that the leases and note offered in evidence constitute but one agreement and are void because the original contract between the Cherokee Indians and plaintiff, leasing the lands in question, were not indorsed with the approval of the Secretary of the Interior and the commissioner of Indian affairs, or ever approved by them.

"5. The court, sitting as a jury, finds that the property in question was situated within the limits of the Indian Territory and is a part of the lands allotted to the Cherokee Nation; that after defendant entered into the possession of the same and on the seventeenth day of February, A. D. 1890, Benjamin Harrison, President of the United States, issued a proclamation by which he commanded all cattlemen and persons grazing cattle upon such lands including the land in question, to remove themselves and their cattle from such land on or before October 1, 1890, and further proclaimed that no cattlemen should be permitted to drive or take cattle upon such lands after such proclamation, and that defendant paid all rents due for the occupancy of said lands up to the time of such proclamation; then the court declares the law to be that such proclamation was an eviction of defendant from the lands in question, and defendant was relieved from paying any rents thereafter.

"6. Under the pleadings and the evidence the court finds the issues on the first count in favor of the defendant."

The court refused the above declarations of law asked by defendant, numbered 1, 4, 5, and 6, to which action of the court in refusing said declarations of defendant objected and saved its exceptions at the time. There was judgment in favor of plaintiff for $1,067.14, from which defendant appealed.

The facts are about as follows:

In 1888 the Cherokee Nation of Indians entered into an agreement in writing by which they leased to plaintiff for the term of five years, a large tract of land in the Indian Territory. This lease was not approved by the Secretary of the Interior, nor the commissioner of Indian affairs. Nor was it executed in conformity with section 2116, Revised Statutes, United States.

On January 1, 1889, the plaintiff sublet a portion of this property consisting of a tract of fifty-nine thousand, six hundred and fifty-eight acres to the defendant, by an instrument in writing by the terms of which it was made subject to all the terms and conditions of plaintiff's agreement with the said Cherokee nation, which said agreement was made a part of plaintiff's agreement with defendant. As a consideration for such lease, defendant promised to pay plaintiff the sum of $2,386.32 per annum payable semiannually, in advance.

To secure these payments notes were given by defendant payable every six months, on the fifteenth day of December and the fifteenth day of June of each year. Seven notes were executed by defendant for $1,193.16 each. This suit is on the note which fell due June 15, 1890.

On the seventeenth day of February, 1890, President Harrison issued his proclamation notifying all persons occupying any and all lands in the Cherokee Nation under contract with the Cherokee Nation (including lands and contract in question) that the Indians had no authority to make such contracts, and that the same were null and void, and commanded all of said parties to remove all their cattle and live stock from said lands on or before October 1, 1890, and as much sooner as said lands or any of them might be or

become lawfully open to settlement by citizens of the United States.

The defendant began immediate preparation to sell off and remove its stock from the leased land. On the nineteenth day of September, 1890, however, the President of the United States issued a second proclamation extending the time for the removal of cattle from the land until December 1, 1890. The evidence was conflicting as to whether or not defendants had moved all of their stock from the land before December 1, 1890. But it was clearly shown that the larger part of it had been removed before that time, and in fact before October 1, 1890.

Defendant refused to pay the rent which accrued after June 15, 1890, on the ground of having been deprived of the use of the land for pasture by reason of the President's proclamation. And the invalidity of the contract and note. The court rendered judgment for plaintiff for the rent accruing up to November 1, 1890, with interest at the rate of ten per cent per annum as provided in the note.

It is contended by defendant that the note in suit is a part of the contract entered into by plaintiff and the Cherokee Nation for the lease of the same lands leased by plaintiff to defendant, and that as the lease first mentioned was not executed in accordance with section 2103, nor with section 2116, Revised Statutes of the United States, it, the note in suit, and the lease from plaintiff to defendant, are void.

Upon the other hand it is contended that the Cherokee Nation held and owned the land, had exclusive possession and jurisdiction over it at the time the contract between it and plaintiff was made, and the right to lease it for grazing purposes, and as defendant leased it from plaintiff and had the use of it according

to the terms of its contract that it should be required to pay therefor.

The lands were patented to the Cherokee Nation by the United States on the thirty-first day of December, 1838, and in this respect their title differs from that of the tribes of Indians, which simply hold by occupation, and at the pleasure of the United States government. The grant, however, was upon the express condition provided by the act of Congress of the twenty-eighth of May, 1830, and which condition is that "the lands hereby granted shall revert to the United States, if the Cherokee nation become extinct or abandon the same."

It was held in *United States v. Reese*, 5 Dill. 405, that: "The Cherokees hold their lands by title different from the Indian title by occupancy. They derived it by grant from the United States. It is a base, qualified, or determinable fee without the right of reversion, but only a possibility of reversion, in the United States. This in effect puts all the estate in the Cherokee Nation." *United States v. Rogers*, 23 Fed. Rep. 658.

It was said in the opinion of Hon. Charles Devens, 16 Opinions of Attorneys-General, 434, that: "The effect of the conveyance by the United States to the Cherokee Nation of this tract of land upon the purchase made by them under the treaty of 1835 was to vest in the tribe a fee simple title to said tract. *Holden v. Joy*, 17 Wall. 211. This tribe did not hold this tract of land by the ordinary Indian title, which is one of occupancy only, which may be continued indefinitely. In such case the fee simple to the land is in the United States. The effect of this sale was to separate distinctly the tract from the public lands of the United States, and vest it in private ownership."

To the same effect is *Cherokee Nation v. Southern Kansas Railway Co.*, 135 U. S. 641.

Section 2103, *supra*, has no application to leases of land by the Indians to persons for a moneyed consideration, and if it has any application at all to leasing land, it is only in case such lease is made to the lessee for personal services rendered or to be rendered by him. Opinions of Attorney-General Garland; 18 Opinions of Attorney-General, 486.

The lease between plaintiff and the Cherokee Nation was not, therefore, void because not executed in compliance with that section. But on June 30, 1834, by act of Congress, it was provided, that "No purchase, grant, *lease,* or other conveyance of lands, or any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution." R. S. U. S., sec. 2116. There is no pretense in this case, that the contract of lease between plaintiff and the Cherokee Nation was executed in accordance with said act; on the contrary it was executed in violation thereof, hence absolutely void. Opinion of Attorney-General Garland, 18 Opinions Attorney-General, 235, 486.

We are confirmed in this position by the proclamations of Benjamin Harrison, President of the United States, of February 17, 1890, and September 19, 1890, by which the lease from the Cherokee nation to plaintiff was ignored, and all live stock ordered moved from the leased lands at the dates respectively fixed in said proclamations. These proclamations were issued in pursuance of the prerogative of our government to exercise a kind of guardianship over the friendly Indians within its borders, and to protect them as far as possible to do so in their property rights against scheming and designing white men, and to this end it

has uniformly, as in this case, exercised the right of excluding intruders from their lands.

The cases in this country are uniform in holding that a contract forbidden by statute is void, and the general rule is, that no action or suit can be maintained either at law or equity upon such a contract, even where the statute does not expressly declare them void.· *Downing v. Ringer*, 7 Mo. 585; *Penn v. Bornman*, 102 Ill. 523; *Melchoir v. McCarty*, 31 Wis. 252; *The Ohio Life Insurance and Trust Co. v. The Merchants' Insurance and Trust Co.*, 11 Humphreys, 1.

The contracts between plaintiff and the Cherokee nation being void, it is contended by defendant that as the contract between plaintiff and defendant, and the note sued on, refer to and are made part of said original contract that they are also void. As a general proposition this position is undoubtedly correct, but the case in hand seems to furnish an exception to that general rule, in this:

The contract between plaintiff and defendant is a contract to which the Cherokee Nation is not a party, and must be governed both as to the manner of its execution, and its construction, by the law applicable to contracts entered into by persons competent to contract. The contract between plaintiff and the Cherokee Nation was void because not executed in compliance with the United States statute, while no such objection exists as to the contract between plaintiff and defendant. There is no claim that the contract between plaintiff and defendant was forfeited by plaintiff, or that plaintiff failed to comply with its terms and conditions except in so far as the President's proclamations had the effect to annul it, and to deprive defendant of its benefits.

Moreover, the note was given for the lease of lands of which defendant took possession under the lease and

enjoyed the benefits for almost the entire term for which the note was given in payment, and the payors will not now be heard to say that the note is void, because plaintiff had no authority to enter into a contract for the lease of the land, and no right to its possession.

The parties to this suit occupied the relation of landlord and tenant, and the general rule in such case is, that one holding under a lease will not be permitted to dispute the title of his landlord. *Stagg v. Eureka Tanning and Currying Co.*, 56 Mo. 317; *Jackson v. Rowland*, 6 Wend. 666; *Walker v. Harper*, 33 Mo. 592; *Pentz v. Kuester*, 41 Mo. 447; *Higgins v. Turner*, 61 Mo. 249; *Loring v. Harmon*, 84 Mo. 123; and the case at bar is no exception to that rule.

The recent case of *Wilcoxen v. Hybarger*, 38 S. W. Rep. 669, was an action of unlawful detainer by a citizen of the Chickasaw Nation of Indians, who hold possession of their lands in common, against his tenant for certain lands leased to him. The defense was that the lessor was not in possession of the land at the time of the lease, and as he only held the land in common with others of his tribe, that he could not maintain the action. The court said: "But the relation of landlord and tenant does not rest upon the landlord's title, but upon the agreement between the parties, followed by the possession of the premises by the tenant under such agreement. This is shown in the rule, old as the law, that the tenant will not be permitted to dispute the landlord's title."

While we do not concur in what we understand to have been the ruling of the trial court with respect to the effect of the President's proclamations on the lease between plaintiff and defendant, as there was evidence tending to show that defendant occupied the land under that lease, during the entire time for which the

note was given, and it also appearing from the record that the court deducted from the amount due upon the note any loss that defendant may have sustained by reason of being compelled to remove its stock from the leased lands under the President's proclamation, the judgment was for the right party, absolutely fair to defendant, and should be affirmed, notwithstanding the declarations of law may have been erroneous.

The judgment is affirmed. All concur.