G. L. CRENSHAW, Respondent, v. COLUMBIAN MINING COMPANY et al., Appellants.

Kansas City Court of Appeals, March 6, 1905.

1. GAMING: Election Bet: Recovery of: Execution Purchaser. A purchaser at an execution sale is not within the statute allowing the recovery of property lost in gaming and has no right legally or equitably as against the winner thereof.

2. ———: ———: Dividend of Corporation Stock. Plaintiff won some stock in a corporation on an election bet and the loser assigned and delivered the same to the plaintiff who presented them to the secretary of the corporation for transfer, which was not done, but some dividends were paid thereon. Held, he was the absolute owner of the stock and the refusal to transfer the stock in no manner affected his title or his right to the dividends.

3. ———: ———: **Winner's Title: Corporation Stock.** A corporation cannot set up as a defense to an action for dividends due on its stock, that the plaintiff won the same on an election bet, where the defense is asked not in the interest of morality but to aid one who is one of its stockholders and its treasurer and not the loser, when the plaintiff can make out his case independently of his illegal conduct.

4. **CORPORATION:** Transfer of Stock: By-Laws: Statutory Construction. Section 965, Revised Statutes 1899, referring to transfer of stock nor by-laws made in pursuance thereof were intended to prevent the alienation of the corporation stock, but merely to enable the company to deal with intelligence with its stockholders; such stock being personal property, can be sold and its transfer on the books of the company be compelled by the courts.

5. ———: Dividends: Debts. A judgment for the right party awarding certain dividends of stock will not be interfered with on the ground of the possibility of debts due by the corporation, especially where the plaintiff is solvent.

Appeal from Bates Circuit Court.—*Hon. W. W. Graves*, Judge.

AFFIRMED.

*Cole, Burnett & Moore* for appellant.

(1) Was the conveyance of shares 25, 26 and 27 from D. C. Brandon to plaintiff, G. L. Crenshaw, void, the consideration being payment of an election bet or wager? The answer is yes. R. S. 1899, secs. 2211, 3426, 3430; Schropshire v. Glascock, 4 Mo. 536; see authorities on 2 and 3 below. (2) Does section 3431 of the statutes (stakeholder section) requiring suit to recover to be brought in three months deprive a defendant of the defense that the contract was a prohibited one, when such defense is presented at a later date, that is, after the three months provided by section 3432 has expired? The answer to this question is no. Richter v. Merrill, 84 Mo. App. 150, 154; Roff v. Harmon, 64 S. W. 755; Spurlock v. Dougherty, 81 Mo. 171; Mason v. Crowder, 85 Mo. 526; Buckingham v. Fitch.

18 Mo. App. 91; Morris v. White, 83 Mo. App. 194; Hayden v. Little, 35 Mo. 418; Williamson v. Bailey, 78 Mo. 636; see authorities under 3 below. (3) Will a court aid the winner in a gambling contract or on a wager to consummate or establish a right to his winnings, he being unable to realize upon or to establish such right and to enjoy the full fruits of such gambling contract or wager without the aid of a court? The answer to this question is no. Hayden v. Little, 35 Mo. 418; Woolfolk v. Duncan, 80 Mo. App. 427; Morris v. White, 83 Mo. App. 194, 196; Keim v. Vette, 167 Mo. 402; Ulman v. Fair Ass'n, 167 Mo. 273; Sprague v. Rooney, 104 Mo. 349; Keating v. Kansas City, 84 Mo. 419; Loan Ass'n v. Cass L. & C. Co., 138 Mo. 394; Swing v. Cider & Vinegar Co., 77 Mo. App. 391; Gibbs v. Gas Co., 130 U. S. 396, 32 L. Ed. 979; Snoddy v. Bank (Tenn.), 7 L. R. A. 705; Kellogg v. Howes (Cal.), 6 L. R. A. 588; Harvey v. Merrill (Mass.), 5 L. R. A. 200; Sprague v. Warren (Neb.), 8 L. R. A. 678; Irwin v. Williar, 110 U. S. 499, 28 L. Ed. 225; State v. Burgdoerfer, 107 Mo. 22-23; Buckingham v. Fitch, 18 Mo. App. 91; Rozelle v. Bank, 141 Mo. 40; Shafer v. Pinchback, 133 Ill. 403. And there is nothing new in the doctrine: 1 Pomeroy, Eq., sec. 402, p. 547; 2 Pomeroy, Eq., sec. 940, p. 1350; Adams, Eq. (8 Ed.), 174; 1 Story, Eq., 301; Hooker v. DePaloss, 28 Ohio St. 257; Skinner v. Henderson, 10 Mo. 205; Herman v. Jencher, 15 Q. B. 561. Illustrative of the above points, 1, 2 and 3, we here copy paragraphs from the reports above cited: "The cases in this country are uniform in declaring the principle that if a note or other contract be made in consideration of an act forbidden by law, it is absolutely void and the illegality of the contract will constitute a good defense at law as well as in equity." Swing v. Cider & Vinegar Co., 77 Mo. App. 398. "No positive law exists for the protection of transactions growing out of and founded upon bets and wagers. . . . They are

contrary *bonos mores* and the courts will refuse to enforce contracts growing out of them." State v. Burgdoerfer, 107 Mo. 23. "The answer of an indorser on a note setting up that the indorsement had been made as a bet on a horse race presented a good defense, though it was in effect an attempt to recover the property lost on the race and was filed more than ninety days after the debt was paid. Roff v. Harmon, 64 S. W. 755; Hayden v. Little, 35 Mo. 418; Morris v. White, 83 Mo. App. 194; Richter v. Merrill, 84 Mo. App. 150; Loan Assn. v. Cass, etc., 138 Mo. 394; Woolfolk v. Duncan, 80 Mo. App. 421; Ordelheide v. Railroad, 80 Mo. App. 368; Morris v. White, 83 Mo. App. 197; State ex rel. v. Ins. Co., 152 Mo. 1; Karnes v. Ins. Co., 144 Mo. 413; Bank v. Farris, 77 Mo. App. 186; Miles v. Withers, 76 Mo. App. 87; State ex rel. v. Railroad, 153 Mo. 157; Cravens v. Ins. Co., 148 Mo. 583. (2) The court committed error against this defendant in adjudging that this defendant should pay plaintiff the sum of $13.65, on the basis that as the Columbian Mining Company, defendant, had on hand in its treasury the sum of $152.48; that then plaintiff was entitled to recover from the company the proportion of said sum of $152.48 that plaintiff's alleged six shares bears to the sixty-seven shares of the corporate stock of said company outstanding. The court had no power to declare a dividend on the facts in evidence for defendant company, for the plaintiff, or for anybody else. The court went beyond its jurisdiction when it attempted to do so.

*Thurman, Wray & Timmonds* for respondent.

(1) Where a cause of action embraces branches of equity jurisdiction, courts of equity assume jurisdiction and retain such jurisdiction of the cause throughout, in order that full and complete justice may be done, even where a remedy at law exists. Cabanne v. Lisa, 1 Mo. 682; Janney v. Spedden, 38 Mo.

395; Harper v. Rosenberger, 56 Mo. App. 388; Verdin
v. St. Louis, 131 Mo. 26; Humphreys v. Milling Co., 98
Mo. 542; Sutton v. Hayden, 62 Mo. 112; Koch v. Hebel,
32 Mo. App. 103; Sharkey v. McDermott, 91 Mo. 647;
Baile v. Ins. Co., 73 Mo. 384; Lingenfelter v. Ins. Co.,
19 Mo. App. 264; Reyburn v. Mitchell, 106 Mo. 365;
Woodard v. Martin, 106 Mo. 324; Jordan v. Harrison,
46 Mo. App. 172; Morrison v. Herrington, 120 Mo. 665.
(2) The transfer and delivery of stock in a corpora-
tion by a stockholder, after indorsement thereon,
authorizing the transfer on the books of the corpora-
tion, passes title of the stock as between the stockholder
and transferee, and as against a creditor, if the pur-
chaser demands a transfer of the stock on the books of
the corporation, even though its officers fail or neglect
to make such transfer. Bank v. Richards, 6 Mo. App.
454; affirmed 74 Mo. 77; Wilson v. Railway, 108 Mo.
588; Ins. Co. v. Goodfellow, 9 Mo. 150; Moore v. Bank,
52 Mo. 379; Spring Co. v. Harris, 20 Mo. 390; Bank v.
Durfee, 118 Mo. 442; Halgele v. Store Co., 29 Mo. App.
492. (3) A court of equity will compel a corporation
to transfer stock on its books, assigned by one stock-
holder to another, on the ground that a corporation
is a trustee for all its stockholders, and a refusal to
transfer such stock is a breach of the duty of such
trustee. Keller v. Mfg. Co., 43 Mo. App. 88; Secret
Service Co. v. Mfg. Co., 125 Mo. 140; Cushman v. Mfg.
Co., 75 N. Y. 365. (4) Before the gaming statute was
enacted the property wagered belonged to the winner,
but the gaming statute gave the loser, his heirs, ex-
ecutors, administrators and creditors, a right to re-
cover the property lost. R. S. 1899, secs. 3424-3425.
(5) The defendant, the Columbian Mining Company,
although pleading the gaming contract, does not come
within any of the provisions of the statute against gam-
ing, and cannot defeat plaintiff's action by such de-
fense. It is a trustee for the stockholders of the cor-
poration, and it can be of no concern to it, who the

stockholders are, how they obtained their stock, whether they paid for it, or it was given to them, its certificates of stock are in a manner *quasi*-negotiable paper, subject to being transferred at the pleasure of the owner. Bank v. Richards, 6 Mo. App. 461, 74 Mo. 77. (6) If defendant Egger can make the defense that the transfer of the three shares of stock by Brandon to plaintiff is void, under the statute against gaming, it is, by virtue of the statute, authorizing a creditor to set aside such conveyance. We insist that he is not within that statute; that his pleading does not show that he is within the statute; that his pleading and the facts show that he is barred by the limitation of the statute creating such right. The limitation is three months. At the time of his purchase, neither he nor his father, F. Egger, the creditor of Brandon, who was solvent, had the right to set aside the transfer. R. S. 1899, sec. 3432. (7) The right to recover back property that has been lost in gaming is limited to three months, and cannot be revoked afterwards. R. S. 1899, sec. 3432; Connor v. Black, 132 Mo. 150; Cutshall v. McGowan, 98 Mo. App. 705. (8) A purchaser at execution sale buys only the interest the execution defendant had in the property sold, and acquires no other rights in the property. Rosenberger v. Jones, 118 Mo. 559; Burke v. Seely, 46 Mo. 334; Hagman v. Schaffner, 88 Mo. 24; Freeman on Executions, secs. 301, 335.

BROADDUS, P. J.—This suit was commenced on the 25th of June, 1901. The defendant is a mining corporation with an organized capital of $10,000 divided into one hundred shares of the par value of $100 each, but thirty-three shares thereof have been cancelled, leaving sixty-seven shares representing the present capital stock. Shares Nos. 25, 26 and 27 were issued to one H. C. Brandon. The plaintiff claimed to be the owner of these shares but the defendant company re-

fused to recognize him as such and to permit him to share in its dividends. The defendant, Egger, also claims to be the owner of said shares, basing his title upon a purchase made at a sale under execution issued upon a judgment against said Brandon. This sale and purchase was made after the time that plaintiff claims he became the owner of such stock. The plaintiff admitted that the consideration for the transfer of the sale of the stock by Brandon to himself was a wager on the result of an election. On the 10th day of November, 1896, Brandon, in writing, assigned and delivered the stock to plaintiff. At that time plaintiff was engaged in the business of banking and a Mr. Avery was his bookkeeper, also the secretary of the mining company. Avery knew that plaintiff owned the shares of stock, according to plaintiff's evidence, and that he wanted him, as secretary of the mining company, to transfer them on its books to him. He says he put them in a pigeonhole where Avery kept the books of the company and that Avery knew where they were; that he also took the certificate book and found the numbers corresponding with the numbers of said shares and wrote his name on the stub of each certificate; that his recollection was that he called Avery's attention to the matter and he replied, "all right;" that some time afterwards he put them in a pigeonhole where he kept his papers; and that he had received from the mining company dividends on said certificates of stock in the year 1897 and in 1898. Warrants for the different dividends paid were in evidence.

Avery testified that he had no recollection of plaintiff's request, immediately after the election in 1896, to make an entry on the company's books of the assignment by Brandon to him of said shares. But he did recollect that such request was made by plaintiff after the levy upon them by the officer under the execution mentioned, but that he refused to make the transfer on the books because of said levy. The stock was after-

wards transferred on the books of the company in the name of defendant Egger. One of its by-laws required that a transfer of its stock should be made only upon the books of the mining company. There was evidence that at the time of the transaction mentioned, Brandon was solvent; and also evidence to the contrary.

Plaintiff asks that the mining company be compelled to transfer said shares of stock on its books to him and for a judgment for the amount of unpaid dividends. The court rendered judgment in favor of plaintiff and defendants appealed. The contention of of appellants is that as the consideration for the sale of the stock in question was unlawful, a court of equity will not interfere to aid plaintiff in consummating it.

Section 3424, Revised Statutes 1899, is: "Any person who shall lose any money or property at any game or gambling device may recover the same by civil action." Section 3925, idem, gives the right of recovery to the heirs, executors, administrators and creditors of the person losing against the winner, as provided in the preceding section. Section 3430 makes betting on an election gaming within the meaning of this act. Section 3432 requires that such action be commenced within three months from the time the cause of action accrued. Section 2211, idem, makes betting on elections a misdemeanor punishable by fine.

On the other hand, plaintiff, although admitting the principle that "where the establishment of plaintiff's cause of action requires the proof of an illegal transaction to sustain it, the courts will deny the plaintiff any aid, but, if the plaintiff can establish his cause of action without proof of an illegal transaction, although his first connection with the subject of the transaction may have been in violation of positive statute, or against public policy, the doctrine of 'clean hands' does

not apply." We will consider the plaintiff's proposition first. Under the statute referred to, betting on the election was contrary to law—*malum prohibitum*. Not only was the act unlawful, but the loser, creditors, heirs or administrator could recover the property lost, provided suit was instituted for that purpose within three months from the time the cause of action accrued. No action was instituted by Brandon or any other person authorized to sue for the recovery of the stock in question. The assignment and delivery of the stock by Brandon to plaintiff completed his title to the same, unless the by-laws of the company requiring such transfers on its books was necessary to make such title complete. The refusal of the secretary of the company to enter the transfer on its books was based upon the ground that the stock had been levied on to satisfy a judgment against said Brandon, and not upon the ground that they had been wagered and lost by him on the result of an election. The defendant, Egger, who was made a party defendant on his own motion, claims the stock by reason of his purchase at the constable's sale, and not as a creditor. He is not, according to his own showing, entitled to any right, legal or equitable, as against plaintiff. It was, therefore, immaterial whether at the time he transferred the stock to plaintiff, Brandon was solvent or otherwise, the transfer having been made before Egger's purcase at constable's sale. The whole question, then, rests as between plaintiff and defendant company. But if plaintiff loses in the suit against defendant company it will be in a condition to recognize Egger as owner under his purchase at said constable's sale. The defense interposed apparently is, therefore, to defeat plaintiff's claim and make good that of Egger. It is the defendant company that raises the issue as to plaintiff's right to relief asked, not in the interest of morality but to aid one whom the evidence shows to be its treasurer and one of its stockholders.

A question similar in principle was decided in Roselle v. Beckemeir, 134 Mo. 380, where the facts were: "Several parties in Missouri agreed to 'pool' their tickets in the Louisiana lottery; the tickets drew several prizes; one of the parties (plaintiff in this case) obtained a draft for the whole prize money; he indorsed the draft to a bank upon an agreement that it should (for a consideration) collect the proceeds, pay part thereof to plaintiff and another specified part to Beckemeir, who was a party to that agreement. *Held,* that the illegality of the original transaction was no bar to the recovery by Beckemeir of his part of the proceeds of the draft." The principle upon which the decision is founded is: "A party seeking to recover on a contract cannot be defeated from recovery by reason of illegality in his prior conduct, when he can make out his case independently of his illegal conduct." Dealing in lottery tickets was prohibited by the laws of Missouri and obtaining a draft as a prize won in such lottery was illegal by reason of the law, but the agreement to divide the proceeds after the draft was collected was not illegal, because in making out his case he could do so without proof of the original transaction which was illegal. See, also, Live Stock Association v. L. & C. Co., 138 Mo. 394.

The appellants to support their theory of the case cite Woolfolk v. Duncan, 80 Mo. App. 422, where the action was to recover on a note given as a settlement of a bet on the result of an election. It was, therefore, an effort to enforce the collection of a demand, the consideration for which was illegal. The court held that the contract was void and: "No action lies upon an unlawful consideration and a contract growing out of an illegal or immoral transaction," etc. Morris v. White, 83 Mo. App. 194, is a case where suit was brought upon a promissory note by an innocent holder, the consideration for which was a gambling debt. The plaintiff was not permitted to recover because the

statute made such note uncollectible. In Keim v. Vette, 167 Mo. 389, it is held: "A pledge of notes to secure a valid indebtedness is illegal and void as to every person whose rights are affected by it if it is tainted with usury. The illegality of the pledge made by the fraudulent depositary or bailee of the notes may be raised by the true owner of the notes. He, as to such pledge, is not a stranger." In Ullman v. St. Louis Fair Association, 167 Mo. 273, it is held: "A contract which by its terms sells to certain persons the exclusive privilege of betting and bookmaking on a race course, is a contract for gambling with the public, and being such the courts will not aid either party thereto in its enforcement."

The appellants have cited numerous other decisions, none of which sustain their position; and we do not deem it necessary to specifically notice them in this opinion. It will be perceived that those given are cases where the courts have refused to enforce unlawful contracts or afford relief from such contracts. They differ materially from the one in hand, as the latter is not to enforce an illegal contract, but is based upon a showing independent of the anterior illegal transaction. At the time plaintiff presented the certificate of stock to said secretary he was the absolute owner of the same as against the world, and the refusal of the company to enter the transfer on his books in no way affected his title.

It is true defendant's by-laws provide that the stock of the association shall be transferred on its books, and section 965, Revised Statutes 1899, provides that the stock of all corporations shall be transferable in the manner provided by their by-laws. But neither said statute nor by-laws was intended to prevent the alienation of corporation stock. But the object of such regulations was to enable corporations to deal with intelligence with its stockholders. By such means corporations are enabled to know to whom to pay dividends, who are entitled to vote for directions and other

necessary matters. Corporation stock is declared by said section to be personal property; and as such it can be sold and transferred to the purchaser, and such purchaser has the right to have the transfer entered on the corporation books in the manner provided by its by-laws. And if it fails or refuses to do so without good excuse, it is within the province of a court to compel it to make such transfer.

Appellant contends that the court committed error in adjudging that the company pay to plaintiff the sum of $13.65 on the basis that it had in its treasury the sum of $152.48, it being his proportionate share of the same. The finding of the court is, that the company has disposed of all its property and effects except said sum of $152.48 and that the same belongs to the owners of the stock. The chief objection to the action of the court is that shareholders are not entitled to any share in the capital stock, nor to any dividends, until all the debts of the corporation are paid; and that the holders of stock would become personally liable to creditors if a dividend should be declared under the circumstances. But there is no evidence of indebtedness by the company. The evidence indicates that it had gone out of business having disposed of most of its property, and the legitimate inference is that it had paid its indebtedness. In any event, plaintiff, who was shown to be solvent, would be liable to a creditor for his proportionate share of said dividends. The error, if one, is too insignificant to authorize the disturbance of a judgment otherwise for the right party.

Affirmed. All concur.