STATE of Missouri ex rel. Jeremiah W. (Jay) NIXON, Attorney General, the Missouri Land Reclamation Commission, the Missouri Air Conservation Commission, and the Missouri Department of Natural Resources, Plaintiff–Respondent,

v.

ALTERNATE FUELS, INC., Defendant–Appellant,

and

Larry Pommier, Defendant.

No. 26193.

Missouri Court of Appeals, Southern District, Division One.

March 25, 2005.

Patrick R. Miller and Anthony D. Gillette, Dezube Miller, P.A., Overland Park, KS, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shelley A. Woods, Assistant Attorney General, Jefferson City, MO, for Respondent.

JAMES K. PREWITT, Judge.

Appellant, Alternate Fuels, Inc. ("AFI"), appeals from a judgment entered in circuit

court, in pertinent part, in favor of the Missouri Land Reclamation Commission, et al ("the Commission"). The portion of the case involved in this appeal originated as a breach of contract claim which alleged that AFI failed to comply with a Consent Agreement ("Agreement") entered into pursuant to the Missouri Surface Coal Mining Law, §§ 444.800, *et seq*, RSMo 2000.[1]

Judgment was entered on March 1, 2004, which held that AFI had breached the Agreement and was therefore liable for payment of the $40,000.00 suspended penalty provided for in the Agreement.

## Background

In 1998, the Missouri Department of Natural Resources, Land Reclamation Program ("LRP") issued a Show Cause order to AFI that stemmed from several notices of violation ("NOV") which had not been abated. In August 1999, after an appeal of the Show Cause order to the Commission, AFI and the LRP entered into an Agreement to settle the penalties stemming from all of the enforcement actions subject to the Show Cause order. The Agreement provided for the two parties to write a Compliance Schedule ("Schedule") which listed the enforcement actions covered by the Agreement and the dates by which they must be abated. AFI agreed to pay a penalty in the amount of $75,000; however $40,000 of that fine was suspended. The purpose of the suspended penalty was to serve as an incentive for AFI to comply with the terms of the Agreement and its accompanying Schedule. Any deviation that caused AFI not to be in compliance with those two documents would require the payment of the suspended penalty. Although the Schedule listed several interim dates for each NOV, the suspended penalty would only be triggered

if a final deadline on a particular violation was missed.

One of the notices of violation subject to the Agreement was NOV No. P91–02–67 ("NOV 67"), which was written "for failure to protect the slopes of an impoundment for erosion." The Schedule directed that AFI must "install erosion control structures per design," by December 1, 1999, and "respond to all staff comments and have an approved plan and map to the LRP" no later than January 1, 2000.

On January 11 and 12, 2000, LRP Inspector Bret Geger toured AFI's facility, known as the Blue Mound Mine, to see if NOV 67 had been abated. He testified at trial that he found the erosion control structure only partially completed and that no approvable plan and map had been submitted for approval. By March 2000, the structure had been finished but AFI still had not submitted a map that could be approved by the LRP.

In a letter dated March 30, 2000, Larry Coen, Staff Director for the LRC, notified AFI that several NOVs referenced in the Agreement and Schedule had yet to be abated. Mr. Coen testified that the last paragraph of the letter included a demand for the collection of the suspended penalty if the NOVs were not abated. The letter also included a twenty-three-page detailed checklist to aid AFI in remedying the remaining violations.

In April, 2001, the State brought action in the Circuit Court of Barton County against AFI seeking, among other things, recovery of the $40,000.00 suspended penalty. As noted above, the court found in favor of the LRP on the breach of contract claim and ordered AFI to pay the suspended penalty.

1. Unless otherwise indicated, all statutory ref-   erences are to RSMo 2000.

## Standard of Review

In a court-tried case, the standard of review is that the judgment of the trial court should be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court should set aside a decree or judgment on the grounds that it is against the weight of the evidence only "with caution and with a firm belief that the decree or judgment is wrong." *Id.*

## Point I

In its first point, Appellant avers that the trial court erred in finding that AFI had not complied with the Agreement through its failure to provide approvable maps and plans to the LRP because there was no substantial evidence adduced at trial to show breach of the Agreement by AFI. Appellant contends that evidence at trial established that AFI submitted plans and maps that were "sufficient"; however the Commission refused to approve the proposed maps because they were not accompanied by affidavits executed by the landowners approving the amendments to the reclamation plan and structures identified on the maps. Appellant also claims that the requirement of having landowner approval of the map was not included in the Agreement and Schedule and was found only in the suggestions attached to Mr. Coen's letter.

If contract terms are clear and unequivocal, the court is bound to enforce the contract as written. *Smith v. Lockwood*, 907 S.W.2d 306, 308 (Mo.App.1995). In this case, the contract is the Agreement and its Schedule and not Mr. Coen's letter of March 30, 2000. Mr. Coen testified to as much, stating, "[t]he enforceable document was the Compliance Schedule. This [the letter] was simply my attempt to help the company get back into compliance before the dates of the Compliance Schedule ran out." This fact alone, however, is not dispositive.

Even if the requirement for landowner approval of the map were part of the contract, the facts in this case, as adduced from the record, show that the map AFI submitted to the Commission was insufficient in several areas other than the landowner approval issue; therefore AFI was in breach of the Agreement. The trial court is in the best position to judge both the credibility of witnesses and the weight that should be given evidence. *State v. Dunn*, 147 S.W.3d 75, 78 (Mo.banc 2004), citing *State v. Miller*, 894 S.W.2d 649, 651 (Mo.banc 1995).

Nowhere in the transcript did the president of AFI, Larry Pommier, state that the sole reason the maps had been rejected was the lack of landowner approval. To the contrary, Mr. Pommier testified that "[t]he State had a number of problems with the map that was submitted." Inspector Geger testified that the map AFI submitted was not approved because it was inaccurate. In addition, he believed that the refusal had nothing to do with the whether landowner affidavits had been submitted. Mr. Coen testified that he didn't know whether the difficulty with the map was strictly related to the landowner affidavit issue. In fact, the attachments to Mr. Coen's letter list several ways in which the map was deficient, including failure to: properly depict the permit boundary north of the tipple area; provide different coloring, shading, or hatching for individual land uses; and show the location of any previously mined land.

There was sufficient evidence before the court for the trial judge to determine that AFI breached the agreement by not pro-

viding the Commission "approvable" maps. Point I is denied.

### Point II

In its second point, Appellant contends that the Consent Agreement was not enforceable to the extent it required AFI to provide affidavits executed by landowners approving the maps and plans because the Commission could not require AFI to obtain the affidavits under any provision of law, and doing so violated public policy. If a contract violates public policy, it is unenforceable. *First Nat'l Ins. Co. of America v. Clark,* 899 S.W.2d 520, 521 (Mo.banc 1995).

In our analysis of the point above, we determined that the requirement for landowner approval of the map and plan was not part of the Agreement or Schedule. The contract, therefore, is not void and unenforceable. Point II is denied.

The judgment is affirmed.

GARRISON, P.J., and RAHMEYER, J., concur.