**Jim LAAS and Colleen Laas, Plaintiffs–Respondents**

v.

**John C. WRIGHT, a/k/a John C. Wright, III, Defendant–Appellant.**

No. 26799.

Missouri Court of Appeals, Southern District, Division One.

May 17, 2006.

F. Randall Waltz, III, Waltz & Associates, Jefferson City, for appellant.

Robert S. Wiley, Wiley Law Office, P.C., Crane, for respondents.

JOHN E. PARRISH, Judge.

John C. Wright (defendant) appeals a judgment for Jim Laas and Colleen Laas (plaintiffs) in an action plaintiffs brought to collect a promissory note given by defendant, and on a counter-claim by defendant to recover amounts defendant previously paid plaintiffs on the promissory note. This court affirms.

Defendant's son, John C. Wright IV, was charged with criminal offenses that ultimately led to his convictions for murder in the second degree, § 565.021,[1] and armed criminal action, § 571.015. Plaintiff had written a bail bond in the amount of $500,000 on defendant's son pending trial. On May 7, 1998, defendant's son was sentenced. The original bond was no longer effective after sentencing. The trial court set an appeal bond at $1,000,000. Defendant requested plaintiff Jim Laas (the bondsman) to write an appeal bond for defendant's son in that amount. He did so

---

1. References to statutes are to RSMo 1994 unless stated otherwise.

and defendant's son was released on bond pending appeal on May 7, 1998.

The fee the bondsman charged for the appeal bond was $90,000. Defendant paid $2,000 cash and gave his promissory note for the balance of the fee. The bondsman explained, "This guarantees one thing, that the person will get out of jail, and will remain either until a trial, an appeal, or the time the Judge revokes the bond." He testified that the promissory note "indicates that the balance would be $88,000.00 that [defendant] owed [plaintiffs], payable in 35 consecutive monthly payments of $2,500.00 each, beginning 6/5/'98 and one payment of $500.00 upon completion of that." Defendant paid $18,000 on the promissory note.

On July 17, 1998, the attorney general filed a motion requesting that the appeal bond be terminated for the reason "[t]hat § 547.170, RSMo 1994, expressly excludes persons sentenced to imprisonment for the crime of murder in the second degree from eligibility for bond on appeal[.]" Section 547.170, as applicable here, provides:

In all cases where an appeal ... is prosecuted from a judgment in a criminal cause, except where the defendant is under ... a sentence of imprisonment for a violation of sections ... 565.021, RSMo, ... any court ... may thereupon let him to bail upon a recognizance, with sufficient sureties, to be approved by such court or judge.

Following the filing of the attorney general's motion, this court "referred [the motion] to the trial court for determination after hearing...." The trial court was directed to rule on the motion "and enter appropriate orders as a result of that hearing and ruling." The trial court revoked the bond. Defendant's son was incarcerated without bond.

Following trial of this case, the circuit court entered findings, conclusions, and judgment as follows:

The court finds the issues on Plaintiffs' Petition in favor of Plaintiffs and against Defendant. The court finds the issues on Defendant's First Amended Counter–Petition for Damages in favor of the Plaintiffs and against the Defendant. The court finds that Defendant is indebted to Plaintiffs in the principal sum of $70,000.00, together with interest thereon at the contract rate of 10% per annum from and after July 30, 1999, until paid in accordance with the promissory note dated May 7, 1999, [sic] Plaintiffs' Exhibit "A," such contract rate of interest to continue to accrue from and after the date of this judgment until paid. The court further finds that Plaintiffs are entitled to recover from the Defendant a reasonable attorney's fee of $5,000.00.

WHEREFORE, it is ordered, adjudged and decreed as follows:

A. Plaintiffs shall have judgment against the Defendant in the principal sum of $70,000.00, together with interest thereon at the contract rate of 10% per annum from and after July 30, 1999, until paid, in accordance with the promissory note dated May 7, 1999, [sic] Plaintiffs' Exhibit "A," such contract rate of interest to continue to accrue from and after the date of this judgment until paid.

B. Plaintiffs shall have judgment against the Defendant for $5,000.00 reasonable attorney's fees.

C. The attorneys are ordered to withdraw their exhibits. This is a final judgment for all purposes. Costs taxed against the Defendant. Execution may issue.

Executed this *11* day of *Jan,* 2005.

Plaintiffs filed a motion to dismiss this appeal for the reason that the judgment has been voluntarily paid in full. That

motion was taken with the case. Plaintiffs have further addressed this matter as Point I of their respondents' brief. They contend "[t]he appeal should be dismissed as moot in that [defendant] has voluntarily made full payment of the judgment and accepted satisfaction of the judgment in full at a time when no execution proceedings were pending and without seeking to post a supersedeas bond." It is appropriate that this court first address this issue.

 A cause of action is moot when the question presented for determination would not have any practical effect upon an existing controversy. *State ex rel. Reed v. Reardon*, 41 S.W.3d 470, 473 (Mo. banc 2001). When a party voluntarily pays a judgment against him, the issue is settled and the question is moot. *Stevens Family Trust v. Huthsing*, 81 S.W.3d 664, 667 (Mo.App.2002). An involuntary satisfaction of judgment, however, does not render an appeal moot. *Two Pershing Square, L.P. v. Boley*, 981 S.W.2d 635, 638 (Mo.App.1998). Satisfaction of a judgment is considered involuntary when a party pays a judgment to forestall collection and no supersedeas bond is posted, or when execution has issued because it is presumed that the payment was made as a result of legal coercion. *Id. See also Kinser v. Elkadi*, 654 S.W.2d 901, 903 (Mo. banc 1983). A court may receive and consider matters outside the record to determine whether satisfaction of a judgment was voluntary or involuntary. *Id.* at 902.

 The timeline that led to plaintiffs filing satisfaction of judgment in the trial court is as follows:

| | |
|---|---|
| January 11, 2005 | Judgment entered |
| April 4, 2005 | Plaintiffs filed request for execution |
| April 11, 2005 | Execution issued in circuit court |
| April 11, 2005 | Sheriff issued levy on Taney, County real estate |
| May 25, 2005 | Date set for execution sale |
| July 20, 2005 | Satisfaction of Judgment entered |

Defendant was involved in a serious automobile accident in March 2005. He was in a coma for more than two months as a result of injuries sustained in the accident. The Taney County real estate on which plaintiffs levied was subject to a sales contract that was scheduled to close July 1, 2005. No explanation appears as to what occurred on May 25, 2005, the date the execution sale was scheduled. From the schedule recited in the pleadings and in the briefs filed in this court, this court infers that the sheriff's sale did not take place.

During defendant's recovery from his injuries, he considered the details of the pending sale of his real estate and became dissatisfied with the proposed sale price. The July 1, 2005, closing did not occur. On that date, defendant's attorney notified plaintiffs' attorney of defendant's failure to complete the sale closing. On July 6, 2005, plaintiffs' attorney hand-delivered a packet of documents to defendant. They included a letter stating that a petition for breach of contract and specific performance would be filed July 7, 2005. Copies of pleadings and other filings directed to defendant's real estate were included in the packet. Thereafter, on July 14, 2005, defendant closed a sale of the real estate. Plaintiffs' receipt and satisfaction of judgment and release of lien of judgment was filed July 20, 2005, in the office of the Taney County Recorder of Deeds.

*Lumaghi v. Abt*, 126 Mo.App. 221, 103 S.W. 104 (1907), was an appeal of a judgment on a promissory note. A motion to dismiss the appeal was filed on the basis that the appellant had paid the judgment. The motion was denied because payment of the judgment was "coerced by the posture of [appellant's] affairs" and, therefore, involuntary. 103 S.W. at 105. The court explained:

[Appellant] had several real estate deals pending, and, as the judgment of the circuit court was a lien on his properties, he was unable to conclude the deals, some of which matured by 2 o'clock on October 25, 1904. In this emergency, an attempt was made to arrange with [respondent] to release the judgment as to [appellant], and take some other security; but respondent's attorney would agree to nothing except an outright payment of the judgment. In order to prevent his prospective deals from being frustrated, [appellant] agreed to pay the judgment, if respondent's attorney would enter satisfaction of it by 12:45 p.m., and this arrangement was carried out.

*Id.*

*Lumaghi* explained further:

Payment by a party against whom a judgment is rendered may often be necessary to protect his property from sacrifice, and what a party does to prevent the sacrifice of his property cannot with any tinge of justice be held to preclude him from assailing the judgment.

*Id.* at 106.

Here, a writ of execution had issued. A notice of levy and return on levy of real estate under execution was filed by the Taney County Sheriff. Although the initial closing on the private sale did not occur, the sale was closed later after defendant learned that plaintiffs intended to again start proceedings to collect the judgment.

Determination of whether a satisfaction of judgment is voluntary or involuntary is made on the facts of each case. *Stevens Family Trust,* 81 S.W.3d at 667. This court concludes, under the facts of this case, that the payment of the judgment was involuntary. The appeal is not moot. Plaintiffs' motion to dismiss is denied.

This case was tried in the circuit court without a jury. The judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *State ex rel. Nixon v. Alternate Fuels, Inc.,* 158 S.W.3d 811, 813 (Mo.App.2005).

Defendant's first point on appeal argues that the trial court erred in awarding judgment in favor of plaintiffs on their petition to enforce the promissory note and in awarding judgment against defendant on his counterclaim for refund because the appeal bond for which the promissory note was given "was illegal and void ab initio in violation of § 547.170, RSMo. (2002 Supp.), in that an agreement which violates a provision of a statute or which cannot be performed without a violation of such a provision is illegal and void."

Defendant relies on *Gilbert v. Edwards,* 276 S.W.2d 611 (Mo.App.1955), and *O'Bannon v. Widick,* 198 S.W. 432 (Mo.App. 1917), in support of Point I. Although not listed as authority following Point I in the Points Relied On, defendant also suggests that *Cherokee Strip Live–Stock Ass'n v. Cass Land & Cattle Co.,* 138 Mo. 394, 40 S.W. 107 (banc 1897), and *Reisler v. Dempsey,* 207 Mo.App. 182, 232 S.W. 229 (1921), support his argument that the promissory note in question in this case was void. This court does not agree with the analogies defendant draws from these cases.

*Gilbert* was a suit to recover on an agreement to split a real estate broker's commission on a real estate sale. The person seeking to share in the broker's commission was not permitted to recover because he was not a licensed real estate broker, nor associated with defendants, who were licensed brokers, in defendants' real estate business. The petition of the plaintiff was dismissed for failure to state

a cause of action. The trial court's actions were affirmed because defendants, as real estate brokers, were prohibited by law from executing an agreement that would pay an unlicensed person a commission on a real estate sale. 276 S.W.2d at 619. The plaintiff in the case was found to have undertaken to recover by reason of an "association with the defendants as broker without being properly licensed." *Id.* The court held that the agreement to split the commission received from the real estate sale was prohibited by statute and, therefore, illegal and unenforceable. *Id.* at 620.

In *O'Bannon*, a person not licensed to treat the sick was not permitted to recover sums claimed due for rendering medical care. In *Cherokee Strip Live-Stock Ass'n*, a note that was sued on was considered part of a contract to rent pasture lands of the Cherokee Nation that had not been executed in compliance with federal law. However, the court permitted recovery for rent for the time the purported tenant had used the land, i.e., although the note was in payment of rent from an improperly executed contract, the owner of the cattle who had used the land was responsible for rent for the time its cattle occupied the property. In *Reisler*, a suit based on a management contract to promote a prize fight was found not enforceable because there was a statutory prohibition against prize fighting.

■ In this case, the trial court set bond in a case in which an accused was charged with murder in the second degree. The bondsman provided an appeal bond. The promissory note that is the subject of this action was given in payment of a substantial part of the bondsman's fee. The accused was released on the bond. This occurred May 7, 1998. On July 17, 1998, the attorney general sought to have the bond terminated, contending the granting of bond for the offense charged

violated § 547.170. Ultimately, the bond was terminated. The accused, who had been free on bond, was incarcerated July 31, 1998.

The bondsman issued a bond that satisfied the terms set by the trial court in the criminal case. The accused was released subject to the terms of the bond. Had the accused not been produced as required by the bond, the bondsman would have been subject to liability in accordance with the terms of the bond.

The plaintiff in *Gilbert* did not have a license that permitted him to be paid a commission in securing the sale of real estate. In *O'Bannon*, the promissory note on which the plaintiff in that case sought recovery was given for payment of a service that required licensure that the plaintiff in the case did not hold, a license to render medical care. In *Cherokee Strip Live-Stock Ass'n*, unlike in this case, a promissory note was given in payment of an indebtedness incurred as rent on an agreement that had not been executed in compliance with applicable law. In *Reisler*, a prohibited conduct had been contracted, promotion of prize fighting. The court held the compensation provided by the contract was not collectible because the activity for which it was to be paid could not take place.

There is no issue in this case regarding licensure. The promissory note that defendant gave was to pay for the bond that was issued in the usual and lawful business of the bail bondsman. The writing of the bond was not an unlawful act. The fact that the bond was terminated on the assertion that the trial court erroneously set bond does not affect the legality of issuing the appeal bond that secured the accused person's release.

■ " 'A bail bond is a contract between the government, on the one side, and the

principal and sureties, on the other.'" *State v. Norton,* 347 S.W.2d 849, 855 (Mo. banc 1961), *quoting* 6 Am.Jur. (Rev.Ed.) 89, § 61. The agreement pursuant to which the appeal bond was written provided that the bond premium was earned upon execution of the bond. The agreement did not guarantee the accused's release for a certain period of time. The promissory note was given in payment of the part of the bondsman's fee that was not paid in cash when the bond was written. The debt for which it was given was a valid debt. Point I is denied.

Point II argues that the trial court erred in awarding judgment for plaintiffs on plaintiffs' petition to enforce their promissory note and in awarding plaintiffs judgment on defendant's counterclaim for refund of the amount paid on the appeal bond. Defendant argues there was a failure of consideration because the bondsman's obligation "was conditioned upon [plaintiffs] fulfilling their obligation under the agreement by keeping [defendant's] son out on bond during his appeal."

 "'A promissory note is a written contract for the payment of money.' *Merz v. First Nat'l Bank,* 682 S.W.2d 500, 501 (Mo.App. E.D.1984). 'The basic elements of a contract are offer, acceptance and consideration.' *Beck v. Shrum,* 18 S.W.3d 8, 10 (Mo.App. E.D.2000)." *Luebbert v. Simmons,* 98 S.W.3d 72, 77 (Mo.App.2003). "Consideration exists where there is a detriment to the promisee or a benefit to the promisor." *Citibank (South Dakota), N.A. v. Wilson,* 160 S.W.3d 810, 813 (Mo.App.2005).

In exchange for the promissory note and cash payment plaintiffs received at the time the appeal bond was executed, the bail bondsman assumed the obligation to assure defendant's son's presence for whatever court proceedings were required during the course of his appeal. The bondsman pledged the sum of $1,000,000 as surety for the performance of that obligation. This was to the detriment of the bail bondsman and was consideration for the indebtedness represented by the promissory note. Point II is denied. The judgment is affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.