JAYBE CONSTRUCTION COMPANY *v.* BECO, INC.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 5-645-4016

Argued July 6—decided September 16, 1965

*Morris Apter,* of Hartford, for the appellant (defendant).

*Harold B. Yudkin,* of Derby, for the appellee (plaintiff).

KINMONTH, J. The plaintiff brought this action to recover for damage arising out of the defendant's failure to furnish and instal certain equipment in accordance with an alleged contract existing between the parties. The court found for the plaintiff, and the defendant has appealed, assigning error in the court's refusal to correct the finding and in that the conclusions are not supported by the court's finding of facts. The defendant abandoned its first

assignment of error; therefore, we need only consider whether the conclusions of the court are supported by the subordinate facts found.

The court's finding may be summarized as follows: Prior to March 30, 1964, the plaintiff obtained certain plans and specifications from the state of Connecticut concerning certain renovations to be made at the Southbury Training School, in preparation for bidding on the job. The defendant learned that the plaintiff and other contractors had obtained such plans and specifications. On March 30, 1964, the defendant, without solicitation, sent a letter to the plaintiff and other contractors relative to the furnishing and installation of certain kitchen equipment, called for under the overall plan, for the sum of $14,450.[1]

The plaintiff and the defendant were not acquainted with one another prior to this communication. The plaintiff submitted an overall bid to the state of $59,900, incorporating in its bid the figure of $14,450 contained in the defendant's letter of March 30, 1964. On April 8, 1964, the bids were opened by the state of Connecticut, and on April 13, 1964, the plaintiff was notified, informally, that it was being awarded the contract. On April 13, 1964, the plaintiff for the first time communicated with the defendant by telephone, stating that the plaintiff had been awarded the contract and that it

---

[1] "March 30, 1964

Re:  Project BIR-61-B150 Southbury Training School Cottages 16, 17, 32 & 33-Dev. 18-Kitchen

In connection with the above job we are pleased to quote a job price of $14,450.00 covering items 4, 11, 11a, 12, 13, 14, 16, 17, & 23.

Price quoted includes delivery and setting in place, less faucets, valves, traps and appurtenances unless furnished by the manufacturer as standard equipment.

All electrical, plumbing & steam connections by others.

Yours truly,
Baron Equipment Company"

had included the defendant's figure, contained in its letter of March 30, 1964, in the overall bid. The plaintiff stated that the bid to the state was a "close" one, and if possible the plaintiff would like to have the defendant "shave" its figure, but in any event the offer of the defendant as submitted in its letter of March 30, 1964, was accepted, and a formal contract would be sent for the defendant's signature. On April 14, 1964, the defendant checked with the public works department of the state of Connecticut and ascertained that it could not substitute certain equipment, and as a result the defendant sent a letter dated April 14, 1964, to the plaintiff setting forth a price of $15,450 instead of the original figure of $14,450. On April 15, 1964, the plaintiff was formally notified by the state that it had been awarded the contract, and the plaintiff sent a "contract" dated April 13, 1964, for the defendant's signature. The defendant refused to sign and refused to do the work for $14,450. The work was completed by another subcontractor for $15,450. (It was stipulated at the trial that if the court found the issues for the plaintiff the amount of damages would be $1000). On these facts, the court concluded that the defendant's letter of March 30, 1964, was an offer which on acceptance would ripen into a contract. There was nothing in the letter of March 30, 1964, to indicate it was a mere quotation, and both parties considered it to be an offer. The offer was accepted by the plaintiff by its telephone call of April 13, 1964, and it became a binding contract. The plaintiff's request to "shave" the figure was merely an inquiry and not a rejection or a counteroffer. The written "contract" dated April 13, 1964, was no more than putting in writing what the parties had already agreed to orally.

The defendant has raised three questions: (1) Was the letter of March 30, 1964, an offer or a

mere invitation to negotiate? (2) Was the telephone conversation of April 14, 1964, an acceptance so as to create a binding contract? (3) Did the parties intend an executed writing to be a prerequisite to creation of a binding contract? The court's conclusions must be tested by the subordinate facts as found and must stand unless they are legally or logically inconsistent with those facts or unless they involve some erroneous rule of law material to the case. *Kielb* v. *Weinberg Realty Corporation,* 147 Conn. 677, 680.

At the outset, certain general comments in the nature of relevant principles of the law of contracts appear to be in order. Broadly stated, preliminary negotiations as to the terms of an agreement do not constitute a contract. But the nature of the particular acts or conduct and the surrounding circumstances are to be considered. In view of these considerations, a matter of interpretation arises for determination. The law is clear that a contract includes not only what is expressly stated therein but also what is necessarily implied from the language used. *Citizens' Committee of the North End* v. *Hampton,* 19 Conn. Sup. 375, 377. It is often difficult to draw an exact line between offers and negotiations preliminary thereto. It is common for one who wishes to make a bargain to try to induce the other party to the intended transaction to make a definite offer, he himself suggesting with more or less definiteness the nature of the contract he is willing to enter into. Apart from any direct language indicating an intent to defer the formation of the contract, the definiteness or the indefiniteness of the words used in opening the negotiations must be considered, as well as the usages of business and, indeed, all accompanying circumstances. *Greenwich Plumbing & Heating Co.* v. *A. Barbaresi & Son, Inc.,* 147 Conn. 580, 586; *Leo*

*F. Piazza Paving Co.* v. *Bebek & Brkich,* 141 Cal. App. 2d 226, 230; 12 Am. Jur. 526, Contracts, § 28. The determination whether a certain communication by one party to another is an operative offer, and not merely an inoperative step in the preliminary negotiations, is a matter of interpretation in the light of all the surrounding circumstances. 1 Corbin, Contracts § 23, p. 67. From the nature of such communications, the question whether certain acts or conduct constitutes a definite proposal, upon which a binding contract may be predicated without any further action on the part of the person from whom it proceeds, or a mere preliminary step which is not susceptible, without further action by that party, of being converted into a binding contract depends on the nature of the particular acts or conduct in question and the circumstances attending the transaction. It is impossible to formulate a general principle or criterion for the determination. Accordingly, whether a communication naming a price is a quotation or an offer depends on the intention of the party as it is manifested by the facts and circumstances of each particular case. 12 Am. Jur. 526, Contracts, § 28.

When the plaintiff used the defendant's figure in computing its own bid, it bound itself to perform in reliance on the defendant's terms. Though the defendant did not bargain for this use of its figure, neither did it make it idly, indifferent as to whether the figure would be used or not. On the contrary, it is reasonable to assume that the defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest and that it would be included by the plaintiff in its bid. It was to the defendant's interest that the plaintiff be awarded the general contract. *Drennan* v. *Star Paving Co.,* 51 Cal. 2d 409, 416. From all the evidence before it, the trier

must determine what the intention was. Intention is an inference of fact, and the conclusion is not reviewable unless it was one which the trier could not reasonably make. *Haaser* v. *A. C. Lehmann Co.,* 130 Conn. 219, 222. From the facts, we cannot say that the court erred in concluding that the defendant's letter of March 30, 1964, was an offer.

The right to revoke an ordinary offer before acceptance is unquestioned; 1 Corbin, Contracts § 31, p. 118; but if the offer is accepted before its withdrawal, a binding contract will be created. 17 C.J.S. 695, Contracts, § 48. A mere inquiry as to whether one proposing a contract will alter or modify its terms does not amount to a rejection. 1 Corbin, op. cit. § 93, p. 388. The finding of the court is clear that the plaintiff in the telephone conversation of April 13, 1964, accepted the defendant's offer and merely made an inquiry as to whether the defendant could "shave" its figure. We cannot disturb this finding. The plaintiff accepted the defendant's offer prior to the defendant's withdrawal. From the rule that the acceptance must be unconditional, it must not be inferred that the mention of matters on which the acceptance of the proposition does not depend prevents the contract from being completed. *Frederick Raff Co.* v. *Murphy,* 110 Conn. 234, 240; *Mercer Electric Mfg. Co.* v. *Connecticut Electric Mfg. Co.,* 87 Conn. 691, 695; *Townsend* v. *Stick,* 158 F.2d 142, 145.

Whether an informal agreement which, according to the understanding of the parties, is to be reduced to writing takes effect as a complete contract at once or only when a formal written contract is executed depends on the intention of the parties as construed from the facts of a particular case. *Gibson* v. *De La Salle Institute,* 66 Cal. App. 2d 609, 630. Where you have a proposal made in writing " 'not

expressly stated to be subject to a formal contract it becomes a question of construction, whether the parties intended that the terms agreed on should merely be put into form, or whether they should be subject to a new agreement the terms of which are not expressed in detail.' . . . 'If upon a true construction of the documents the reference to a formal contract amounts to an expression of a desire on the part of one or other of the parties, or both, that the already complete contract should be reduced into a more formal shape, then the fact that no such contract has been executed' does not negative the existence of a contract. . . . [I]t becomes a question of fact, whether the parties intended the agreement . . . to constitute a contract or intended that there should be no contract until the execution of a formal written contract, and it depends ' "upon the intention of the parties as gathered from the language used when interpreted in the light of the attendant and surrounding circumstances." ' " *Atlantic Terra Cotta Co.* v. *Chesapeake Terra Cotta Co.,* 96 Conn. 88, 95, 96, 97; *Socony-Vacuum Oil Co.* v. *Elion,* 126 Conn. 310, 317; *A. T. Klemens & Son* v. *Reber Plumbing & Heating Co.,* 139 Mont. 115. It is a question of fact for the determination of the trier. The subordinate facts amply support the court's conclusion that a contract was consummated and that the formal document would be nothing more than a memorial of that contract.

There is no error.

In this opinion PRUYN and JACOBS, Js., concurred.