Betty Anne BECK,
Plaintiff/Respondent,

v.

Lillian L. SHRUM,
Defendant/Appellant.

No. ED 76140.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 1, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 17, 2000.

James W. Whitney Jr., Law Firm of Menees, Whitney & Burnet, Clayton, for Respondent.

Robert A. Wulff, Law Office of Amelung, Wulff & Willenbrock, St. Louis, for Appellant.

SHERRI B. SULLIVAN, Judge.

Lillian L. Shrum ("Defendant") appeals from a judgment and order granting a Motion to Enforce Settlement in favor of Betty Anne Beck ("Plaintiff"). The issue on appeal is whether Defendant's $7,500 offer had been rejected by a counteroffer. We affirm.

The underlying cause of action in this case is for personal injury arising out of an automobile accident involving Defendant and Plaintiff. Prior to trial, Ms. Susan Horowitz ("Horowitz") represented Defendant. On the day set for trial, the trial court granted Horowitz's Motion to Withdraw, and Ms. Crystal Smith ("Smith") entered her appearance for Defendant. Mr. James Whitney, Jr. ("Whitney") remained Plaintiff's counsel at all times.

At the hearing on the Motion to Enforce Settlement, Whitney and Smith advised the trial court of the following. After the petition and answer were filed, a pre-trial settlement conference was held. At this conference, Plaintiff wanted $50,000. Defendant's insurance company offered to settle the case for $7,500. At some point after the settlement conference, Whitney told Horowitz that "if I could get $15,000 I could maybe talk [Plaintiff] into settling, although [Plaintiff] had never given [Whitney] any indication of another figure for which [Plaintiff] would settle." After talking with Defendant's insurance company, Horowitz indicated that "they couldn't, but the $7,500 was still available." Horowitz did not appear at the hearing because she was on maternity leave.

Whitney knew that Smith was reassigned to the case six days before the hearing. Four days before the hearing, Smith was present at Whitney's office for

another matter. At that time, Whitney said to Smith "if I could get a little more money, I could settle it. . . ." Smith indicated that she would talk to the appropriate people, and Whitney replied "how about 10 thousand, some more money will settle it." After this conversation, Whitney spoke with Plaintiff, and she agreed to accept the $7,500 if she could not get more money.

While going through security at the courthouse with Smith on the day of the hearing, Whitney accepted the $7,500 offer of settlement. Smith replied "I don't know how that you can do that, because you made a demand of 10." After calling Defendant's insurance company, Smith told Whitney that the company said "there wasn't $7,500 on the table" because the offer had been rejected when Whitney said "[i]f you can get me 10, we can make this thing go away." In granting Plaintiff's Motion to Enforce Settlement, the trial court took "judicial notice of the custom and practice that an offer is on the table until it is withdrawn, and the attorney is advised that it is withdrawn."

In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We are concerned primarily with reaching a correct result, and thus we do not need to agree with the reasoning of the trial court in order to affirm the result. *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996). A motion to compel settlement adds to a pending action a collateral action for specific performance of the settlement agreement. *McKean v. St. Louis County*, 964 S.W.2d 470, 471 (Mo. App. E.D.1998). The party requesting specific performance of a settlement agreement has the burden of proving, by clear, convincing and satisfactory evidence, his or her claim for relief. *Payne v. E & B Carpet Cleaning, Inc.*, 896 S.W.2d 650, 651 (Mo.App. E.D.1995). The trial court is

afforded much discretion in deciding whether to award the equitable remedy of specific performance. *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 173 (Mo. banc 1999).

On appeal, Defendant argues that the trial court erred in granting Plaintiff's Motion to Enforce Settlement because the trial court refused to apply principles of contract law in order to determine whether a valid offer existed at the time of the motion. Defendant further argues that because a counteroffer acts as a rejection of the original offer, no enforceable offer was present when the court entered its order.

Contract law governs a settlement agreement. *Tinucci v. R.V. Evans Co.*, 989 S.W.2d 181, 184 (Mo.App. E.D.1998). A legal, valid settlement agreement must possess all the essential elements of any other contract. *Id.* Although the trial court characterized the issue as "not a matter of contract law" but rather as a matter of custom and practice among attorneys in St. Louis, application of contract law mandates the same result.

The basic elements of a contract are offer, acceptance and consideration. *Id.* Any acceptance that includes new or variant terms from the offer amounts to a counteroffer and a rejection of the offer, which may become open again only if renewed by the offeror. *Id.* However, although a request for a change or modification of a proposed contract made before an acceptance thereof amounts to a rejection of it, a mere inquiry as to whether the offeror will alter or modify its terms, made before acceptance or rejection, does not amount to a rejection. *Jaybe Construction Co. v. Beco, Inc.*, 3 Conn.Cir.Ct. 406, 216 A.2d 208, 211 (1965) (concluding that the following statement was an inquiry: "The plaintiff stated that the bid to the state was a 'close' one, and if possible the plaintiff would like to have the defendant 'shave' its figure. . . ."); *Foster v. West Pub. Co.*, 77 Okla. 114, 186 P. 1083, 1084 (1920) (concluding that the following state-

ment, made subsequent to certain suggestions by the speaker, was an inquiry: "This, I say, would be my idea of a square deal; but, if you are not disposed to take the same view, I suppose there is nothing for me to do....."). Consequently, if the offer has not been withdrawn, it may be accepted within a reasonable time to create a binding contract.

The issue, then, is whether Whitney's discussion with Smith at his office constituted an inquiry or a counteroffer. Both Smith and Whitney testified that Whitney used conditional language, i.e. "if," in the discussion. The language is not a clear rejection of the original offer, but rather it inquires about a larger amount of money while still keeping the original offer under consideration. Therefore, because the $7,500 offer had not been withdrawn and because Whitney made an inquiry about $10,000, not a counteroffer, his acceptance of the $7,500 offer at the courthouse created a binding contract.

The judgment of the trial court is affirmed.

CRANE, P.J. and ROBERT G. DOWD, Jr., J., concur.