ACCEPTED
12-14-00295-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/27/2015 11:49:01 AM
CATHY LUSK
CLERK

# JOHN D. REEVES
## ATTORNEY AT LAW

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
2/27/2015 11:49:01 AM
CATHY S. LUSK
Clerk

1007 Grant Ave•Lufkin, Texas 75901
(936) 632-1609 telephone • (936) 632-1640 facsimile
Email: tessabellus@yahoo.com

February 27, 2015

12th Court of Appeals
Attn: Cathy S. Lusk, Clerk
1517 West Front Street, Suite 354
Tyler, Texas 75702

Re: Case Number                          12-14-00295-CR
    Trial Court Case Number              2013-0615

Style:  Shadondra Jenkins
                v.
        The State of Texas

RE: Brief

Dear Madam, following please find for filing Motion to Withdraw and Anders Brief for Appellant, Shadondra Jenksins.

Thank you for your courtesies.

Sincerely,

*/S/ John D. Reeves*
John D. Reeves

E file cc. April Ayers-Perez, Asst. DA, Angelina County, P.O. Box 908, Lufkin, Texas 75901

**12-14-00265-CR**

_____

**IN THE COURT OF APPEALS
FOR THE TWELFTH JUDICIAL DISTRICT
TYLER, TEXAS**

_____

**SHADONDRA JENKINS
V.
The State of Texas**

_____

**APPEAL FROM THE 159TH JUDICIAL DISTRICT COURT
OF ANGELINA COUNTY, TEXAS**

_____

**ANDERS BRIEF OF APPELLANT
SHADONDRA JENKINS**

_____

Respectfully considered,

*/s/John D. Reeves*

_____

JOHN D. REEVES
Attorney at law
1007 Grant St.
Lufkin, Texas 75901
Phone: (936) 632-1609
Fax: (936) 632-1640
SBOT # 16723000
Email: tessabellus@yahoo.com
ATTORNEY FOR APPELLANT

**ORAL ARGUMENT NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Parties:**

Appellant in Trial Court:

       Shadondra Jenkins
       TDCJ# 01962913
       Marlin Unit
       2893 State Hwy 6
       Marlin, Texas 76661

Appellee in Trial Court:

The State of Texas

**Trial and Appellate Counsel**:

**Appellant**:

JOHN D. REEVES              **Trial**   Jerry Whiteker
Attorney at Law                     Attorney at Law
1007 Grant Ave.                      P.O. Box 1443
Lufkin, Texas 75901              Lufkin, Texas 75902
Phone: (936) 632-1609            Phone: 936/632-5551
Fax: (936) 632-1263              SBOT: 21361500
SBOT # 16723000

**Appellee**:

April Ayers-Perez               **Trial**  Katrina Carswell
Angelina Asst. District Atty.        Angelina Asst. Dist. Atty.
P.O. Box 908                       P.O. Box 908
Lufkin, Texas 75901              Lufkin, Texas 75901
Phone:  936-632-5090           Phone: 936/ 632-5090
SBOT#  01921800               SBOT # 10482700

# TABLE OF CONTENTS

Page:

IDENTITY OF PARTIES AND COUNSEL………………………………… .ii

TABLE OF CONTENTS……………………………………………........ iii

INDEX OF AUTHORITIES…………………………………………... iv,v

STATEMENT OF THE CASE……………………………………………1

STATEMENT OF JURISDICTION…………………………………........2

ANDERS ISSUE'S CONSIDERED………………………………….....2-3

STATEMENT OF FACTS …………………………………………………3-12

SUMMARY OF THE ARGUMENT ...…………………………….....12-13

ARGUMENT…………………………………………………………13-24

CONCLUSION AND PRAYER…………………………………….....24

CERTIFICATE OF COMPLIANCE…………………………………..25

CERTIFICATE OF SERVICE…………………………………………...25

# INDEX OF AUTHORITIES

Page:

**U.S. Supreme Court Cases**

Anders v. California, 386 U.S. 738, (1967) .........................................................1

Strickland v. Washington, 466 U.S. 668, (1984) ..............................................22,23

**Fifth Circuit**

Nero v. Blackburn, 597 F.2d 991, (5th Cir. 1979) ..............................................24

**Texas Cases**

Blanco v. State, 18 S.W. 3d 218, (Tex. Crim. App. 2000) .................................14

Dinkins v. State, 894 S.W.2d 330, (Tex. Crim. App. 1995)................................19

Euler v. State, 158 S.W. 3d 88, (Tex. Crim. App. 2007) ....................................22

Ex parte Delaney, 207 S.W. 3d 794, (Tex. Crim. App. 2006) ............................14

Harris v. State, 656 S.W. 2d 481, (Tex. Crim. App. 1983)..................................21

Jackson v. State, 877 S.W. 2d 768, (Tex. Crim. App. 1994)................................23

Jordan v. State, 495 S.W. 2d 949, (Tex. Crim. App. 1973)..................................21

Kniatt v. State, 206 S.W.3d 657, (Tex. Crim. App. 2006.....................................16

Ladd v. State, 3 S.W.3d 547, (Tex. Crim. App. 1999)..........................................21

McFarland v. State, 928 S.W. 2d 482, (Tex. Crim. App. 1996) ..........................22

Montgomery v. State, 810 S.W.2d 372, (Tex. Crim. App.1990)...........................20

Rhoades v. State, 934 S.W.2d 113, (Tex. Crim. App. 1996).................................21

Rodriguez v. State, 203 S.W.3d 837, (Tex. Crim. App.2006)..............................20

Young v. State 8 S.W 3d 656, (Tex. Crim. App. 2000) ……...............................14

## RULES AND OTHER AUTHORITIES

U.S. Const. Amend. VIII ...................................................................................20

U.S. Const. Amend. XIV.................................................................................21,22

Texas Rules of Appellate Procedure, Rule 33.1....................................................1,21

Texas Code of Criminal Procedure Article 26.13 ..................................................15

_____

**12-14-00295-CR**
_____

# IN THE COURT OF APPEALS
# FOR THE TWELFTH JUDICIAL DISTRICT
# TYLER, TEXAS
_____


Shadondra Jenkins

v.

The State of Texas

---

## APPEAL FROM THE 159th JUDICIAL DISTRICT COURT
## OF ANGELINA COUNTY, TEXAS

---

## ANDERS BRIEF OF APPELLANT
## SHADONDRA JENKINS

---

TO THE HONORABLE COURT OF APPEALS;

COMES NOW, Shadondra Jenkins., Appellant, pursuant to Texas Rules of Appellate Procedure, Rule 33.1 by and through her attorney of record, John D. Reeves, who respectfully submits this Anders brief for Appellant and would show as follows:  (Anders v. California, 386 U.S. 738, (1967)

### **STATEMENT OF THE CASE**

Appellant was charged by indictment in the October/December 2013 term of the Angelina County Grand Jury with two counts of Injury to a Child allegedly,

committed on the 6th and 20th day of August 2013. (Cause # 2013-0615, CR.18 - 19) Appellant pled guilty, without a plea bargain and waived a trial by jury on May 20th, 2014. (RR Vol. 2; CR. 55-59)   (RR Vol. 2 p.6-10) A pre-sentence investigation report was ordered by the court. (RR Vol. 2, p. 7, 14) On October 2nd, 2014 the trial court conducted a sentencing hearing and the Appellant was sentenced to one hundred fourteen months (114 months) in the Texas Department of Criminal Justice, Institutional Division. (RR Vol. 4, p.7-125)  John Reeves was appointed to do the appellant's appeal on October 14th, 2014. (CR p.75)   Notice of appeal was filed by trial counsel on October 7th, 2014. (CR p.72) On October 24th, an order was signed for the clerk's record and reporter's record. (CR p. 82) On October 3, 2014 a Trial Court's Certification of Appeal was signed by the trial court not limiting appellant's right of appeal as to punishment only.  (CR p. 71)

## STATEMENT OF JURISDICTION

The Trial Court certified Appellant's right to appeal without restriction as to punishment only on October 2, 2014. (CR p. 71)

## ANDERS' ISSUES CONSIDERED

1.  Did the appellant waive her right of appeal on guilt/innocence?

2.   Is the appellant's plea of guilty free and voluntary and were proper admonishments given by the trial court?

2.

3. Is there error regarding the admission into evidence of States' Exhibit one through thirteen including any error regarding trial objections?

4. Is the sentence of the trial court disproportionate in violation of the Eighth Amendment and Fourteenth Amendments to the United States Constitution?

5. Did trial counsel provide ineffective assistance concerning appellants sentencing hearing?

## STATEMENT OF FACTS

The case was called for trial and appellant pled guilty to a two count indictment of Injury to a Child. (RR Vol. 2 p. 6-7) Appellant was admonished by the trial court of the range of punishment. (RR Vol. 2 p. 4-5) The trial court inquired as to the appellant's competency to stand trial and found the appellant competent. (RR Vol. 2 p. 5-6) After request for a pre sentence investigation trial court ordered the same. (RR Vol. 2 p. 7-8, 10) Admitted without objection were State's Exhibit one being Written Plea Admonishments-Waivers-Stipulations. (CR p. 56-59; RR Vol. 2 p. 10) The stipulation reflects there is no plea bargain agreement between the State and the appellant. (CR p.58) ;( RR Vol. 2 p.9) The trial court began the appellant's sentencing hearing on October 2, 2014. (RR Vol. 4) The State called three witnesses. The court confirmed that four videos were shared with each counsel regarding DVD statements of the two

3.

children. In addition, the State added some notes gathered by the State from a CPS file. (RR Vol. 4 p. 5-7) Without objection a report from Gene Stanley providing a forensic mental health evaluation was admitted by the trial court. (RR Vol. 4 p. 8) Defense counsel was allowed to call John Weismuller out of order for purposes of convenience. (RR Vol. 4 p. 10-19) Mr. Weismuller testifies he is counsel for the appellant in CPS Court and a conservatorship agreement was made with the State on September 24th, 2014. (RR Vol. 4 p. 12-19) He explains there are two cases involving various children of the appellant with the State as managing conservator and the appellant possessory conservator and the CPS Court is awaiting the outcome of appellant's sentencing. (RR Vol. 4 p. 13-19)

Samantha Skinner states she works as the foster care supervisor for child protective services of Angelina County. (RR Vol. 4 p. 22) She explains the appellant was arrested for physical abuse of her children while the children were living with their grandmother, Ms. Lamb. (RR Vol. 4 p. 23) The names and ages of the three children are provided and the process of how the children came to the grandmother's house is explained. (RR Vol. 4 p. 24-26) The witness explains the plan of service the appellant entered into and what was expected of her to seek reunification with her children. (RR Vol. 4 p. 26-29) The concerns of the department were whether she had stable housing between November 2013 and

4.

March 2014. (RR Vol. 4 p. 19)  There were issues with the appellant of keeping a stable job. (RR Vol. 4 p. 29-30) The witness believed the appellant was lacking in her desire to complete the plan of service. (RR Vol.4 p. 31)  After the removal of the appellant's fourth child who was a newborn', she was offered another similar service plan. (RR Vol. 4 p. 32)  She describes some negativism by the appellant toward a plan of her mother keeping the children in her possession. (RR Vol. 4 p. 32-34)

The State offered exhibits 2-13 which were photos of injuries to two of the children as named in the indictment. (RR Vol. 4 p. 36)  The photos were admitted without objection. (RR Vol. 4 p. 37)

On cross-examination, the witness admitted that the appellant did not want her mother to raise her children. (RR Vol. 4 p. 38)  The witness explained the reasons the appellant had issues with her mother, including a previous rape of herself by one of her mother's boyfriends, her mother forcing her to have an abortion, animosity towards her mother's lifestyle and some of her mother's friends at church. (RR Vol. 4 p. 39-40)  Lastly, there were issues with the discipline applied by the mother to the appellant. (RR Vol. 4 p. 40-41)  The witness was questioned about reasons why the appellant would have trust issues with the department. (RR Vol. 4 p. 42-44)   The witness did not believe the

5.

appellant was truly remorseful for her actions toward the two children. (RR Vol. 4 p. 43, 45-46) On re-direct examination, the witness reflected background checks on the grandmother revealed no abuse of the appellant by her mother. She shares that the appellant sometimes gives less than the full truth concerning her employment and housing. (RR Vol. 4 p. 46-47) The parties discussed recent changes in visitation offered by the department. (RR Vol. 4 p. 47-49)

Christopher Harris testifies he was assigned the Appellant to be her probation officer for a misdemeanor theft by check case. (RR Vol. 4 p. 51-52) While being supervised under bond conditions for the instant matter he states she admitted using K-2 on July 16th while with her boyfriend. (RR Vol. 4 p. 52-53) He states they have discussed catching up on her probation fees and community service hours. (RR Vol. 4 p. 53, 55) On cross-examination the officer admits the appellant does not have a car, license or job. (RR Vol. 4 p. 55-56)

Janice Lamb testifies that the appellant is her eldest child and she has custody of three of the appellant's children. (RR Vol. 4 p. 57-58) The children are 14, 9, and 3 and have resided with her for a year. (RR Vol. 4 p. 58) She explains she found out about the appellant hurting the children through a relative and then by CPS. (RR Vol. 4 p. 58-59) She explains when she first saw the children after the alleged abuses she believed the children were terrified, confused and did not

6.

understand why there were not normal kids. (RR Vol. 4 p. 59) One of the children was very 'zoned out" and clingy. (RR Vol. 4 p. 60) Another child she described as terrified. (RR Vol. 4 p. 61) She explains the children are better, but still are having issues. Prior to the allegations in August of 2013, the witness explains she was basically raising the children at one time and there were times the appellant was around, but that the children have mostly lived with her. (RR Vol. 4 p. 62-64) The witness explains that there were times over the course of years that she and her daughter disagreed about how to rear the children. (RR Vol. 4 p. 64-65) The witness explains she is involved in the two CPS cases and has all four children in her possession, which includes the new born. (RR Vol. 4 p. 65-66) The grandmother is surprised that the appellant is now saying she was abused by her. (RR Vol. 4 p. 66-67) She describes various activities that the appellant participated in. (RR Vol. 4 p. 67-69) She states that eventually when the appellant became 18 she was not able to give her much direction that was accepted by the appellant. (RR Vol. 4 p. 69) She explains the two children who are the subject of the indictment are in counseling two times a month. (RR Vol. 4 p. 70) The children are experiencing positive changes as a result of the counseling. (RR Vol. 4 p. 70-71) She testifies both children have fluctuated up and down in their schoolwork. (RR Vol. 4 p. 72) Over objection, the witness was allowed to testify

7.

to the observations she has of the children regarding not seeing their mom. (RR Vol. 4 p. 73-74) She responds the children seem content where they are. (RR Vol. 4 p. 74) One child is "extremely defiant, angry and has bouts of crying and is frustrated. (RR Vol. 4 p. 74) Another child is nervous and not real responsive to yelling, but expressing confusion and fear regarding discipline. (RR Vol. 4 p. 75) She explains she and the appellant have not had many conversations throughout the CPS process. (RR Vol. 4 p. 75-76)

On cross-examination the witness admits there is not a good relationship with the appellant. (RR Vol. 4 p. 77) After a discussion concerning the appellant's allegations regarding the witness's boyfriends the witness was further questioned. (RR Vol. 4 p. 78-80) The witness reveals five marriages and nine different men in her home during the appellant's childhood. (RR Vol. 4 p. 81) She admits the appellant did not like some of the men. (RR Vol. 4 p. 81) She denies forcing the appellant into an abortion. She denies knowledge of one of the men impregnating her daughter. (RR Vol. 4 p. 82) She admits disciplining the appellant with switches, and belts but denies harshly disciplining the appellant. (RR Vol. 4 p. 82) She testifies she does not want the children reunited with the appellant. (RR Vol. 4 p. 84) She did not answer as to what punishment she thought was right for the appellant other than justice for her grandchildren. (RR Vol. 4 p.

8.

84)   She states she did the best she could in rearing the appellant and was not aware of any changes she would had made other than giving the appellant more attention. (RR Vol. 4 p. 85-86)   The court inquired as to the circumstance in August 2013 when the allegations of Injury to Child were filed. The witness explained she was not feeling well as a result of a migraine headache and had the children transported to the appellant. (RR Vol. 4 p. 89-90)  The children were dropped off but not returned. The witness explains the children were in the appellant's care for about two years until they were returned as a result of the August 2013 incident. (RR Vol. 4 p. 90-92)

The defense called the appellant to testify. She testifies concerning her employment and residence (RR Vol. 4 p. 93-94) She explains her job history at Dollar General, Ruben's, Motel Six and Cybershield. (RR Vol. 4 p. 94-95)  She agreed that she was behind on her probation fees and had transportation issues. (RR Vol. 4 p. 95)  The appellant admits she plead guilty on May 20, 2014 to the two counts in the indictment. (RR Vol. 4 p. 95)  She stated that counseling has had a great impact in her life since her release from jail in November 2013. (RR Vol. 4 p. 96)  She stated she changed her life cycle and worked on parenting classes, anger management, communication skills, discipline and the admission of the offense. (RR Vol. 4 p. 96-97)  The appellant admits she has great sorrow for her

9.

actions towards her children. (RR Vol. 4 p. 97-98) Although disagreeing with her mother, the appellant explains her version of the abuse and abortion in her childhood. (RR Vol. 4 p. 98-99) She gave detail to the types of discipline of her mother involving hitting her with a switch and extension cord. (RR Vol. 4 p. 100) The appellant explained the abuse she committed on her children was what she was taught and did not realize it was not right then or in the instant matter. (RR Vol. 4 p. 100) The appellant describes the medication prescribed too her to help with her sleep, thoughts, moods and control her anxiety received from the Burke Center. (RR Vol. 4 p. 100-101) She explains her youngest child is involved in some allegations by her boyfriend but she no longer lives with him which is the subject matter of the second CPS case. (RR Vol. 4 p. 101-102) The appellant explains the process of visitation with her children and her attempts to get photos of her children online. (RR Vol. 4 p. 102-103) The appellant is asking for probation as a result only having the misdemeanor check case and no prior felony convictions. (RR Vol. 4 p. 104) She explains her financial circumstances and attempt to get an online education. (RR Vol. 4 p. 105) In regard to the allegations that her boyfriend abused her children she explains she is not aware of what the truth is. (RR Vol. 4 p. 105-106) She does admit her boyfriend has hurt her but she stayed with him for survival and then became pregnant with the last child. (RR Vol. 4 p. 106)

10.

Appellant states she has learned from the experience.

"What I've learned from all of this is if I'm not good I can't be any good to my children. I learned that just because something happened with me doesn't make it right for me to raise my children that way. I've learned that I have to take responsibility for my actions. And then I've learned that this cycle has to be broken.'  I didn't realize it then. I didn't know. I really didn't know the severity of this until I started talking and releasing things and I've learned that I'm going to break that cycle because I do not want my children to have to go through anything like this again and I want to be better so I can be a better parent for them whenever I can see them again. I want to be a better person and be a better mother so I'll never, ever this life this mistake ever again. (RR Vol. 4 p. 107)

On cross examination the State tries to clarify dates of parenting classes and anger management attended to by the appellant. (RR Vol. 4 p. 109-110)  The appellant explains her delay from May until September in getting evaluated by the Burke Center. (RR Vol. 4 p. 110)  The witness explains the process of being evaluated by ADAC. (RR Vol. 4 p. 110-111)  She does explain that in her past the ADAC evaluation was the result of the use of drugs. (RR Vol. 4 p. 11-112)  The appellant denies recently asking her sister for money and explains her sister volunteered $ 70.00 and she took it but did not use it to pay for probation, her children or to get a license. (RR Vol. 4 p. 113-114)   The State reviewed the appellants initial statement to the police and admitted until she saw the photos of the children she was not aware of the severity of the injuries. (RR Vol. 4 p. 115-

11.

116)  She stated she admitted the marks on the children came from the use of a cord. (RR Vol. 4 p. 116)  She admits it was a year after the incident until she went to parenting classes. (RR Vol. 4 p. 117)  The appellant explains she tries to convey concern and love to her children through the CPS worker. (RR Vol. 4 p. 117-119)  After explanation by the trial court the appellant was sentenced to 114 months in the TDCJ- ID. (RR Vol. 4 p. 123-125)

## **SUMMARY OF THE ARGUMENT**

Five issues are presented as a basis for appeal which is stated in Anders Issues considered.  The first issue is whether the appellant's right to appeal was waived in regard to her plea of guilty. Appeal attorney believes her right to appeal her plea was waived in reviewing the plea waiver and trial court certification signed after sentencing. Appellant addresses this point in order to address the voluntariness of appellant's plea The second issue is whether the appellant's plea of  guilty was entered freely and voluntarily and whether the trial court properly admonished the appellant?  Appeal counsel finds there is a properly executed waver and stipulations concerning her plea of guilty to the entire allegations contained in the State's Indictment.  Also, appellate counsel finds the trial court properly admonished the appellant and that appellant's plea of guilty was free and voluntary and that appellant was not under the influence of any substance nor was there any

12.

issue of appellant's competence. Thirdly, appeal counsel considers the admissibility of the State's thirteen exhibits and any error regarding trial objections. Counsel finds all exhibits were admitted without objection, further the pre sentence investigation report was admitted without objection. The one objection not ruled upon in favor of the defense was not pursued by the defense as the State changed its manner of questioning. Fourthly, counsel considers whether the sentence rendered by the trial court was disproportionate in violation of the U.S. Constitution. There was no objection made in the trial court as to the sentence rendered. The trial court gave a reasoned explanation regarding the sentencing and allowed the appellant to respond. The sentence in this case is within the parameters of the Texas Penal Code regarding punishment for a third degree felony. Lastly, appeal counsel considers whether trial counsel was ineffective. The record reveals trial counsel presented evidence through the appellant and cross examined the witnesses and there is no basis on the record to support ineffective assistance of counsel.

## **ARGUMENT**

### **1.**

**Did the appellant waive her right of appeal on guilt/innocence?**

In order to consider the second possible issue of the voluntariness of appellant's

13.

entry of her plea, appeal counsel first considers this issue of waiver of appeal.  The

appellant signed a waiver of appeal at the time of her plea in regard to

guilt/innocence, (CR 60; RR Vol. 2 p. 9)

The appellant was asked:

The Court: You do you further understand you're giving up your
right to appeal a conviction in this cause if I determine that's
what should happen"
The Defendant: Yes; sir.


Additionally, the trial court's certification of appeal signed on October 2, 2017

limited the appellant's right to appeal as to solely punishment.  CR p. 71) In this

instance the appellant waived her right to appeal as to guilt/innocence at the time

of her plea and again signed a trial court certification to the same effect after her

sentencing.  Ex Parte Delaney, 207 S.W. 3d 794, 797 (Tex. App. 2006); Blanco v.

State, 18 S.W. 3d 10.218, 219-20 (Tex. Crim. App. 2000).  In regard to the trial

court's certification signed on October 2, 2014 the trial court did limit appellant's

appeal to sentencing only. (CR p. 71) Is the appeal limited to punishment only

where there is an open plea of guilty to the trial court?  (RR Vol. 2 p. 6, 7) As this

Honorable Court is aware, in Young v. State, 8 S.W 3d 656,666-67 (Tex. Crim.

App. 2000) the Court held "whether entered with or without an agreed

recommendation of punishment by the State, a valid plea of guilty or nolo

14.

contendre "waives" or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error. Thus, although as here there is a guilty plea it does not necessarily waive a right to any appeal.  In the instant matter where was no enhancement paragraph and there was no exchange agreement. (CR p. 18-19) Appellant counsel believes as a result of the appellant's waiver signed at the time of the plea and the trial court certification signed after sentencing as shown above evidences a voluntary waiver of appeal of guilt/innocence.

**2.**

**Is appellant's plea of guilty free and voluntary and accepted with proper admonishment to the appellant?**

Appellant entered a plea of guilty to the allegation contained in the State's indictment of two counts of Injury to a Child.  The record does not reflect there was any plea agreement. (RR Vol. 2 p. 6-7, 10-11; CR p. 58))  The trial court ordered a pre- sentence investigation.  The trial court inquired of whether the appellant's plea of guilty was freely and voluntarily made and accepted her plea of guilty. (RR Vol. 2 p. 4-7)   Admonishments are required by Article 26.13 Texas Code of Criminal Procedure.   As such, to be "voluntary," a plea must be the expression of the defendant's own free will and must not be induced by threats,

15.

misrepresentations, or improper promises. See <u>Kniatt v. State</u>, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) The record shows that appellant acknowledged both orally and in writing that she was aware of the consequences of entering a plea of guilty. (State's Exhibit one, RR Vol. 2 p. 5-8) Appellant acknowledged that she understood the consequences of her plea of guilty. (RR Vol. 2 p. 4) During the plea hearing the appellant was asked if the plea if she was guilty and was it the truth and she answered yes. (RR Vol. 2 p. 6) In addition, appellant stated her plea was free and voluntary and that she was mentally competent to enter her plea and was not claiming the defense of insanity or involuntariness. (RR Vol. 2 p. 5, 6) The trial court additionally explained to the appellant after questioning the appellant by admonishing her of the process of sentencing. (RR Vol. 2 p. 7-9)

Having reviewed the entire record, appellate counsel does not find appellant's plea of guilty was involuntary. . The record shows the trial court advised appellant what could occur if the trial court accepted her plea of guilty to the two counts contained in the indictment. (RR Vol. 2 p.4)

The Court: Ms. Jenkins, in this case, as you are well aware, you've been indicted by the Grand Jury with two felony accounts of injury to a child. These are third degree offenses which if found guilty the punishment range will be no less than two years and no greater than ten years in the penitentiary and a find not to exceed $ 10,000. Do you understand that?

16.

The Defendant: Yes, sir.

Appellant signed State's exhibit one stipulating to her guilt and the waiver of her rights. (CR p. 56-59; RR Vol. 2 p. 8-10) Appellate counsel believes the record establishes that appellant entered a free and voluntary plea of guilty after proper admonishment by the trial court. In addition, appellant testified in punishment on that she committed the offenses.

Q; And May 20th, 2014 you entered a plea of guilty to the charges in this case:

A: Yes, sir. (RR Vol. 5 p. 96)

Q: You admitted guilt in this, correct?
A: Yes, sir.

Q: You know you made a mistake?
A: I made a huge mistake. (RR Vol. 5 p. 97)

Q: And with counseling you understand what remorse is?
A: Yes, sir, I understand.
Q: And you're sorry that it's happened?
A: I'm sorry every day I wake up. (RR Vol. 2 p. 97-98)


A: I felt that's the way I was supposed to discipline my children because that's how I was disciplined but now I do realize that it wasn't right then and it wasn't right when I did it and I want… I'm not going to do it anymore. I'm going to make that change. I'm not going to keep that cycle. (RR Vol. 2 p. 100)

Q. What have you learned from all of this?

17.

A. What I've learned from all of this is if I'm not good I can't be any good to my children. I learned that just because something happened with me doesn't make it right for me to raise my children that way. I've learned that I have to take responsibility for my actions. And then I've learned that this cycle has to be broken. I didn't realize it then. I didn't know. I really didn't know the severity of this until I started talking and releasing things and I've learned that I'm going to break that cycle because I do not want my children to have to go through anything like this again and I want to be better so I can be a better parent for them whenever I can see than again. I want to be a better person and be a better mother so I'll never, ever this life mistake ever again. (RR Vol. 2 p. 107)

The appellant admitted when first questioned she did not realize the extent of the injury to each child by the use of a belt and cord. (RR Vol. 2 p. 115-116) The appellant lastly expressed her sorrow for her actions and her desire that her children know her sorrow for the acts she committed. (RR Vol. 2 p. 126-128)

**3.**

**Is there error in the admission of State's exhibit one through thirteen four including any error regarding trial objections?**

Only thirteen exhibits were offered at the plea and sentencing hearing. No objections were made to any of the exhibits offered by the State. (RR Vol. 2 p. 10) State's exhibits 2-13 were admitted without objection at the sentencing. (RR Vol. 4 p. 37) Defense counsel objected to the State asking Ms. Lamb the mother of the

18.

appellant, if one of the children "responded in a positive or negative way to not having contact with their mother. (RR Vol. 4 p. 73) After discussion and further questioning the objection was not continued by defense counsel to obtain a ruling from the court. (RR Vol. 4 p. 73-74) A State objection to questioning by the defense counsel on the number of men Ms. Lamb had lived with was overruled after discussion. (RR vol. 4 p. 78-80) A second objection by the State as to Ms. Lamb regarding a question calling for speculation was not pursued. (RR Vol. 4 p. 87) Defense counsel objected to Nicole Yarbrough testifying on behalf of the State as the rule had been invoked and the witness had been in the courtroom. The objection was sustained by the trial court. (RR Vol. 4 p. 120-122) Appellant counsel found no other instances of objection in the record. Generally it is held that a timely objection must be made in order to preserve an error in the admission of evidence. <u>Dinkins v. State</u>, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995) After review of the above objections appellant counsel only finds one objection that was not ruled upon by the trial court that defense counsel made as the objection was not pursued by defense counsel as the State altered the questioning. There being no basis for arguing an erroneous admission of either State's exhibit one through thirteen nor to the pre- sentence investigation report- appellate counsel does not reach an issue of whether the substantial rights of the appellant was disregarded. In

19.

viewing the trial court's decision to admit or exclude evidence and whether there was an abuse of discretion it is generally been determined that the trial court is in the best position to decide questions of admissibility, and will be upheld if a trial court's decision to admit or exclude evidence is "within the zone of reasonable disagreement when reviewed under an abuse of discretion standard. See <u>Rodriguez v. State</u>, 203 S.W.3d 837, 841 (Tex. Crim. App.2006); <u>Montgomery v. State</u>, 810 S.W.2d 372, 390-91 (Tex. Crim. App.1990). Appeal counsel believes there was no preserved error regarding any of the exhibits or the objections by defense counsel. As such appeal counsel finds no harm in relation to the record to subvert the substantial right of the appellant to require a reversal of the trial courts sentence.

## 4.

**Was the trial court's sentencing of one hundred and fourteen months a disproportionate sentence in violation of the Eighth Amendment and Fourteenth Amendments to the United States Constitution?** (U.S. Const. Amend. VIII; U.S. Const. Amend. XIV.)

The sentence of one hundred fourteen months in the ID-TDCJ was within the penalty range of two to ten years, for a third degree felony in the State of Texas. In this matter there was no objection to the trial court concerning the sentence. There was no allegation or complaint that the sentence is grossly disproportionate, constituting cruel and unusual punishment, and as such the error

20.

if any was not preserved for review. See, Tex .R. App. P. 33.1(a); <u>Rhoades v. State</u>, 934 S.W.2d 113, 119-20 (Tex. Crim. App. 1996). (RR Vol. 4 p. 123-125) The trial court explained his rationale for the sentenced assessed. Here, after the trial court announced its sentence at the punishment hearing, appellant made no objection to the trial court about the punishment assessed and did not assert her claim under the Eighth Amendment and the Texas Constitution in the trial court. (RR Vol. 4 p. 125) The appellant was allowed to address the trial court and expressed her sorrow and accepted responsibility for her actions. She further explained her goal to overcome her experience with her mother and her children. (RR Vol. 4 p. 126-128) The trial court explained that it gave due consideration to

the facts of the case in regard to punishment. (RR Vol. 4 p. 129-130) As such, the punishment of one hundred fourteen months falls within the range set forth by the Texas Legislature. Therefore, the punishment is not prohibited as cruel, unusual, or excessive per se. <u>Harris v. State</u>, 656 S.W. 2d 481, 486 (Tex. Crim. App. 1983); <u>Jordan v. State</u>, 495 S.W. 2d 949, 952 (Tex. Crim. App. 1973) Appeal counsel believes appellant has waived her cruel and unusual punishment complaint. See <u>Ladd v. State</u>, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999) There is no evidence that the appellant's sentencing process did not provide fundamental fairness. U.S.

21.

Const., Amend XIV. <u>Euler v. State</u>, 158 S.W. 3d 88, 91 (Tex. Crim. App. 2007) Fundamental fairness requires that an accused receive a fair trial. In the instant matter, the appellant's testified to what she believed to explain the cycle of violence that resulted in injury to her children and the history of the appellant was reviewed regarding the CPS case by the witness Johnny Weismuller. (RR Vol. 4 p. 10-19) Further the court reviewed records of CPS provided in regard to the PSI report. (RR Vol. 4 p. 122-123) In addition the appellant testified to her social, criminal and rehabilitative history as reflected previously.

**5.**

**Was trial counsel's representation ineffective?**

The standard promulgated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984) requires a two step analysis. First it requires a demonstration that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. To satisfy this requirement appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. <u>McFarland v. State</u>, 928 S.W. 2d 482, 500 (Tex. Crim. App. 1996) This Honorable court then will judge a claim of ineffectiveness based on the totality of the representation. <u>Strickland</u>, supra, 466 U.S. at 695-96, 104 S. Ct. at

22.

2069. The presumption is that trial counsel was effective. See, <u>Jackson v. State</u>, 877 S.W.2d 768,771 (Tex. Crim. App. 1994). Trial counsel did present evidence through the appellant's testimony. Trial counsel cross-examined each witness in detail concerning the appellant's cycle she stated she was attempting to overcome. (RR Vol. 4 p. 37-46, 49-51, 55-57, 77-87) The appellant was able to present her reasoning for her behavior and her request for probation regarding her plans and goals. (RR Vol. 4 p. 93-119) Appeal counsel finds no basis to determine trial counsel's strategy or to ascertain of what value it might have been to call or not to call other witnesses. The appellant's testimony as set out previously supports the facts of the indictment the appellant pled guilty to.

Appeal counsel does not find support from the record to argue "but for" trial counsels decisions in the sentencing hearing there would have been a different result. Especially, considering the appellant's testimony regarding offense. (RR Vol.2 p. 4, 8-10; RR Vol. 4 p. 96-98,100,107,115-116,126-128) In reviewing the totality of trial counsel's representation and presentation of evidence as considered above- the record does not present evidence of trial counsel falling below the objective standard of reasonableness and professional norms. <u>Strickland,</u> supra. Further, appellant counsel does not find a single egregious error or omission that

23.

will constitute ineffective assistance. <u>Nero v. Blackburn</u>, 597 F.2d 991, 994 (5th Cir. 1979)

As such appellate counsel offers this Anders Brief.

## <u>CONCLUSION AND PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Appellant's counsel respectfully requests, as relief, that he be allowed to withdraw  as this appeal is frivolous and so advise Appellant so that she may pursue a pro se brief if she so desires, or alternatively to appoint other counsel for Appellant in the prosecution of this appeal.

Respectfully considered,

*/s/John D. Reeves*

_____
JOHN D. REEVES
Attorney at law
1007 Grant St.
Lufkin, Texas 75901
Phone: (936) 632-1609
Fax: (936) 632-1640
SBOT # 16723000
Email: tessabellus@yahoo.com
ATTORNEY FOR APPELLANT

24.

## CERTIFICATE OF COMPLIANCE

I John D. Reeves Counsel for appellant hereby certify that this brief exclusive of the rule provisions that do not provide counting contains 5,226 words.

*/s/John D. Reeves*

_____

John D. Reeves

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing Appellant's Brief on  27nd day of February , 2015 been forwarded to the State's Counsel, Art Bauereiss,  District Attorney of Angelina County, by e-filing.

*/s/John D. Reeves*

_____

John D. Reeves
Attorney for Appellant,
Shadondra Jenkins